IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SIGHT SCIENCES, INC., | |
| Plaintiff, | Case No.: _____ |
| v. | Underlying litigation: |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | Case No. 21:1317-GBW-SRF United States District Court District of Delaware |
| Defendants. | |

## DEFENDANTS' MOTION TO COMPEL
## NON-PARTY DR. REAY BROWN TO COMPLY WITH SUBPOENA

Pursuant to Northern District of Georgia Local Rule 37.1 and Federal Rules of Civil Procedure 37(a) and 45(d), Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. ("Defendants") move this Court to enforce the subpoena *duces tecum* served on Dr. Reay Brown in connection with the action *Sight Sciences, Inc. v. Ivantis, Inc., et al.*, Case No. 21:1317-GBW-SRF, which is pending in the United States District Court for the District of Delaware.

In the underlying litigation, Sight Sciences, Inc. alleges that Defendants' implant for treating glaucoma—the Hydrus® Microstent—and doctors' subsequent use of that implant infringes five patents, which generally relate to intraocular

implants for treating glaucoma. Among other defenses, Defendants counter that the asserted patents are invalid and that the Hydrus® Microstent does not infringe. The amount of damages of any alleged infringement is also disputed.

Defendants served a non-party subpoena on Dr. Brown, Sight Sciences' Chief Medical Officer. The reason for subpoenaing Dr. Brown's personal documents is that Dr. Brown has highly relevant documents from his work outside of Sight Sciences, including documents from before his employment with Sight Sciences that are in Dr. Brown's personal possession, custody, and control. Dr. Brown has been a central figure in the field of glaucoma implants for several decades. He is the named inventor on several patents in the field, and some of those patents were the subject of a prior lawsuit by another company (Glaukos Inc.) against Ivantis (one of the Defendants in the present case). The requested documents are highly relevant to Defendants' defenses in the underlying litigation, including its non-infringement, invalidity, and damages defenses.  For instance, some of Defendants' invalidity defenses are premised specifically on Dr. Brown's work and patents that predate his employment at Sight Sciences. Indeed, Sight Sciences' patents are invalid because Dr. Brown patented critical aspects of Sight Sciences' alleged inventions long before Sight Sciences. Sight Sciences' counsel is representing Dr. Brown in connection with Defendants' subpoena, and Sight Sciences plainly does not want Defendants to

2

obtain this highly relevant discovery demonstrating that its own Chief Medical Officer prior work invalidates Sight Sciences' patents.

Dr. Brown scarcely challenges the relevance of his documents. And his objections to the burden of complying with the subpoena have been unsupported and unpersuasive. Indeed, to minimize the burden, Defendants have offered that they would be willing to settle for Dr. Brown producing the materials he has already searched for and produced in the prior Glaukos litigation. Defendants have made reasonable efforts to avoid burdening Dr. Brown, and Dr. Brown has not identified any particularized burden associated with responding. Defendants therefore respectfully request that the Court order Dr. Brown to produce documents in response to the subpoena.

## BACKGROUND

Despite not selling a product that practices the asserted patents, Sight Sciences filed the underlying litigation on September 16, 2021,[1] the day after it was announced that Ivantis settled another patent infringement litigation, *Glaukos Corporation v. Ivantis, Inc.*, 8:18-cv-00620-JVS-JDE, in the Central District of

---

[1] Approximately four months later, on January 10, 2022, Alcon acquired Ivantis, and approximately seven months later, on August 1, 2022, Sight Sciences added three Alcon defendants to the underlying litigation. June 29, 2023 Declaration of Justin Bova ("Bova Declaration") ¶¶ 2–3, attached as Exhibit 1.

California, surrounding the Hydrus® Microstent. Ivantis conceived of, developed, and put the Hydrus® Microstent implant through clinical trials over the course of a decade, finally receiving FDA approval in August 2018. Sight Sciences, meanwhile, obtained the first of the five asserted patents on October 16, 2012, and has continued obtaining patents in the same family, with the fifth asserted patent issuing as recently as July 19, 2022. These patents generally relate to intraocular implants for reducing intraocular pressure with a goal of treating glaucoma.

Sight Sciences heralds Dr. Brown, its CMO since 2018, as "one of the most prolific inventors and innovators in the history of surgical glaucoma."[2] Over the course of his more than three-decade ophthalmology career, Dr. Brown has published large volumes of peer reviewed articles on glaucoma and is a prominent thought leader in the space.[3] Along the way, Dr. Brown has amassed dozens of patents, being the named inventor on many early patents that relate to intraocular implants for treating glaucoma.

It is no surprise, therefore, that Dr. Brown's patents and his omnipresence in the glaucoma field placed him at the center of the *Glaukos* litigation, where, in 2018,

---

[2] Reay H. Brown, M.D., Joins Sight Sciences as Chief Medical Officer, https://www.sightsciences.com/us/reay-h-brown-m-d-joins-sight-sciences-as-chief-medical-officer/ (Oct. 23, 2018).
[3] *Id.*

Glaukos Corporation asserted two of Dr. Brown's patents against Ivantis, Inc.'s Hydrus® Microstent. As an inventor on the patents asserted in that case, Dr. Brown collected and produced documents responsive to Ivantis' subpoena and provided deposition testimony. Neither Ivantis nor its prior counsel has access to these relevant documents and testimony because the protective order in the *Glaukos Litigation* required destruction post-disposition.[4] Defendants have attempted to confirm with Glaukos' counsel whether they too no longer have these materials, but to-date have not received a clear response.[5]

Dr. Brown's work in this field, experience, and consulting with both parties in the underlying litigation over the course of his career—not to mention his current position as CMO at Sight Sciences—make his documents relevant to the underlying litigation, just as they were to the *Glaukos* litigation. Although not an inventor on the asserted patents in the underlying litigation, Dr. Brown is a named inventor on several prior art references and has conducted actual studies and surgeries with physical implantable glaucoma products that are all relevant to Defendants' defenses. In light of that, the Requests seek documents and communications relating to Dr. Brown's investigation and work with the prior art devices, including any

---

[4] Bova Declaration, ¶¶ 4–5; *see also Glaukos* Litigation Protective Order at 16, attached as Exhibit 2.
[5] Bova Declaration, ¶ 6.

representations he made to Glaukos, Ivantis, or Sight Sciences about his prior work or his patents. Any such documents would be relevant to invalidity because much of Dr. Brown's work pre-dates the asserted patents. His representations would also be relevant to issues of damages, if Dr. Brown has attributed any value to his work. Further, if Dr. Brown communicated with Sight Sciences about his patent portfolio and his efforts in the *Glaukos* litigation, where his patents were also asserted against Ivantis' Hydrus, his representations potentially rebut Sight Sciences' willful infringement allegations.

Though Dr. Brown was listed on Defendants' initial disclosures in May 24, 2022,[6] Sight Sciences added him to their initial disclosures for the first time on March 22, 2023—after the date of substantial completion of document production[7]—as an individual likely to have discoverable information regarding "[k]nowledge of certain prior art stent products and related IP developed with Mary Lynch." [8] And of the paltry 14,890 documents Sight Sciences has produced to date

---

[6] Defendants' May 24, 2022 Initial Disclosures, attached as Exhibit 3.
[7] *Sight Sciences* Litigation Scheduling Order at 2, attached as Exhibit 4.
[8] Sight Sciences' March 22, 2023 Initial Disclosures, attached as Exhibit 5.

in the underlying litigation, Sight Sciences' CMO, Dr. Brown, is not a listed custodian on a single document.[9]

To support their defenses, Defendants served a subpoena on Dr. Brown—who is represented by Sight Sciences' counsel—requesting documents relating to prior art devices for treating glaucoma and communications with the parties in the underlying litigation. Specifically:

- Request Nos. 1–3 seek documents and communications relating to, for example, EyePass, nitinol coils, and other implants for reducing intraocular pressure or improving aqueous outflow. These documents would be relevant to prior art treatments that support Defendants' invalidity case, including documents related to real-life devices implanted in humans for treating glaucoma.

- Request Nos. 4–8 seek all communications with Sight Sciences (Plaintiff), Ivantis or Alcon (Defendants), Glaukos, Gmp Vision Solutions Inc., and

---

[9] Bova Declaration, ¶¶ 7–8. In the District of Delaware, parties must disclose the 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. *See* Delaware Default Standard for Discovery, ¶ 3(a), *available at* https://www.ded.uscourts.gov/sites/ded/files/pages/Electronic%20Discovery%20D efault%20Standard_0.pdf. Although Sight Sciences did not choose Dr. Brown as a custodian, one would expect that an eyecare company's CMO would have been the custodian on at least *one* document in some non-custodial database searched.

GMP Companies, Inc. (assignees on Dr. Brown's patents) (including any employees thereof). These documents would be relevant to Dr. Brown's prior art, interactions with the parties regarding relevant prior art and the field, and potential damages.

The subpoena also included requests seeking documents provided in the *Glaukos Litigation* (Request No. 9), relating to the delivery of viscoelastic, including in combination with another surgical implant (Request Nos. 10 and 12), relating to efforts to inform or instruct others regarding the implantation, use, advantages, or disadvantages of the Hydrus® Miscrostent implant (Request No. 11), and compensation received from Sight Sciences prior to his employment (Request No. 13) and from the sale of patent rights (Request No. 14).[10] These requests too are geared towards documents demonstrating activities or surgeries that pre-date the Asserted Patents and are relevant to invalidity, and damages as it relates to valuation of patents or intellectual property for intraocular implants and the competitive market.

Despite the relevance of these specific requests, Dr. Brown, through Plaintiff's counsel, responded with general objections that the subpoena seeks information that is irrelevant and that its requests are overly broad and unduly

---

[10] *See generally* Defendants' Subpoena, attached hereto as Exhibit 6.

burdensome. In addition to general objections, Dr. Brown raised identical objections to each request, repeating the same 500-plus words 13 times in response to Defendants' requests.[11] Specifically, the objection states:

> Dr. Brown incorporates by reference its General Responses and Objections. Dr. Brown further objects to the Request as follows: Dr. Brown objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks "[a]ll Documents and communications." The request is unduly burdensome because Ivantis previously obtained document discovery from Dr. Brown in the *Glaukos* litigation and made no attempt to access that previously-collected information, which likely is in the possession, custody, or control of its counsel, Glaukos's counsel, or their agents, before serving its subpoena. Additionally, Ivantis knows from prior discovery in the *Glaukos* litigation (including but not limited to deposition testimony of Dr. Brown (Brown Tr. 6/8/2019 at 103-104) and his wife, Dr. Lynch (Lynch Tr. 6/8/2019 at 19-22) that Dr. Brown possesses a large volume of paper and electronic records comprising approximately 100 pounds of paper files, along with documents and communications stored on three decommissioned computers stored in his basement, plus the computer he presently uses. It is unreasonable to require Dr. Brown to incur the time and cost burdens associated with searching those paper and electronic records a second time for the same party. Ivantis's subpoena is unduly burdensome because it fails to allow a reasonable time to comply by purporting to require Dr. Brown to search and produce documents in fourteen days. Ivantis unreasonably delayed in seeking discovery from Dr. Brown. Ivantis knew of the volume of records Dr. Brown maintains, listed Dr. Brown as a person with knowledge relevant to this lawsuit in Ivantis's Rule 26 Initial Disclosures—which were served over one year ago on May 24, 2022— and nevertheless waited until the close of fact discovery to serve a

---

[11] Though the Subpoena included 14 requests, Defendants' Subpoena at 7, it appears Dr. Brown did not respond or object to Request 5. *Compare* Defendants' Subpoena at 7 *with* Objections & Responses to Defendants' Subpoena at 9–11, attached as Exhibit 7.

subpoena requiring production of documents within fourteen days. Dr. Brown further objects to the request because the information sought is inaccessible electronically stored information that is not reasonably accessible because of undue burden and cost, to the extent that the subpoena purports to require Dr. Brown to search three decommissioned computers stored in his basement. Dr. Brown does not possess the computer components or technical expertise to search those devices without undue burden and expense.

Dr. Brown further objects to this Request to the extent it seeks documents and communications not relevant to any claim or defense asserted in this litigation. Dr. Brown has been a part-time employee of Sight Sciences since about October 23, 2018, and the documents sought by the subpoena pre-date Dr. Brown's association with Sight. Dr. Brown further objects to this Request to the extent it seeks documents not currently in Dr. Brown's possession, custody, or control or to the extent it seeks documents that are just as readily available to Defendants. Dr. Brown further objects to this Request to the extent it seeks documents and communications that are confidential or protected from disclosure by any applicable privilege or protection.[12]

Notably, the objections did not explain why Dr. Brown could not, for example, simply re-produce the material produced in the *Glaukos* litigation. Ultimately, subject to those and other objections, Dr. Brown responded that—as to each Request—he "will not search for or produce" responsive documents.[13]

During the parties' meet and confer, in an effort to alleviate any potential burden on Dr. Brown, Defendants inquired whether Dr. Brown had the materials (or an electronic copy of the materials) that were collected and produced in the *Glaukos*

---

[12] *See generally* Objections & Responses to Defendants' Subpoena.
[13] *Id.*

litigation, including the material that was purportedly returned to him afterwards. Defendants also inquired whether Dr. Brown had asked Glaukos or its counsel whether they had the materials they collected in the *Glaukos* litigation. Plaintiff's counsel was unsure with respect to either inquiry and agreed to check with Dr. Brown. Defendants relayed that Ivantis' former counsel does not have copies pursuant to the Protective Order in the *Glaukos* litigation of destroying materials post-disposition, and that Glaukos' counsel had not to date confirmed whether they are in possession of the materials. Plaintiff's counsel explained that Dr. Brown's objection was to any collection from his home, and that Sight Sciences may still object to any production even if Dr. Brown does not.[14]

Defendants explained that while they would proceed with motions practice, they remained committed to working to resolve this dispute without the Court's assistance and would withdraw this motion should Dr. Brown produce responsive documents.[15] Defendants therefore respectfully request that this Court compel Dr. Brown to produce documents responsive to Defendants' subpoena.

## ARGUMENT AND CITATION TO AUTHORITY

A non-party to an action may be compelled to produce discoverable

---

[14] Bova Declaration ¶¶ 11–12.
[15] Bova Declaration ¶ 14.

documents and things as provided in Rule 45 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(c). Rule 45, meanwhile, permits a serving party to "move the court for the district where compliance is required for an order compelling discovery or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Because the material sought is discoverable and the burden for producing it comports with the Federal Rules of Civil Procedure, Defendants move this Court—in the district where Dr. Brown resides—to compel Dr. Brown's production of documents in response to the subpoena.

## I.      The material sought from Dr. Brown is discoverable.

The scope of discovery that may be obtained via subpoena under Federal Rule of Civil Procedure 45 "is the same as the scope of discovery under Rule 26(b)." *Dering v. Serv. Experts All. LLC*, No. 1:06-CV-357-RWS, 2007 WL 4299968, at *2 (N.D. Ga. Dec. 6, 2007) (quotation omitted). In other words, litigants need not satisfy a different, higher standard when seeking discovery from non-parties.

Further, the standard for discoverable information imposed by Rule 26(b) is low. Discovery may be taken regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Material "need not be admissible in evidence to be discoverable." *Id.*

Here, the documents sought are unquestionably relevant. The requests seek

prior art documents, activities, or descriptions of surgeries that pre-date the Asserted Patents and would tend to show the invalidity of the Asserted Patents.  The requests also seek documents that are relevant to rebutting Sight Sciences claims for damages in the form of lost profits or reasonable royalty, as documents related to valuation of Dr. Brown's patents or intellectual property for intraocular implants and the competitive market tend to show the value intellectual property rights in the same field as the Asserted Patents. Dr. Brown's communications with Sight or Ivantis too may be relevant to rebutting Sight Sciences' willful infringement allegations and further demonstrate the scope and content of the prior art in this field.

Dr. Brown does not meaningfully or specifically dispute relevance. Instead, he repeats the unremarkable fact that he has been "a part-time employee of Sight Sciences since about October 23, 2018, and the documents sought by the subpoena pre-date Dr. Brown's association with Sight."[16] Of course, the requests explicitly recognize October 23, 2018, as the relevant point in time.[17] That the materials sought pre-date that time does not make them irrelevant. Quite the opposite.

## II.    Dr. Brown's objections are inadequate and unfounded.

Beyond relevance, Dr. Brown has asserted largely generalized, boilerplate

---

[16] Objections & Responses to Defendants' Subpoena at 5, 7, 9, 11, 12, 14, 16, 17–18, 19, 21, 23, 24, and 26.
[17] Defendants' Subpoena at 6, 7, and 8.

objections to the burden the subpoena allegedly imposes. Those objections lack the requisite specificity to sustain them, likely because Plaintiff and Dr. Brown could not support more specific objections under any set of facts.

As a threshold matter, the Eleventh Circuit has long made clear that objections must be stated with "sufficient specificity" to allow the trial court to evaluate whether and why the requests might be objectionable. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Following that guidance, this Court has refused to consider objections—including to third-party subpoenas—where objecting parties "fail[ed] to explain the basis for their objections with sufficient specificity to enable the court to determine whether the objections are valid." *Urim Corp. v. Krongold*, 1:05-cv-633-GET, 2006 WL 2224012, at *1 (N.D. Ga. Aug. 2, 2006). Likewise, "boilerplate objections"—such as the ones asserted—"are improper" and this Court therefore refuses to consider them. *CFTC v. Am. Derivatives Corp.*, No. 1:05-CV-2492-RWS, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007). After all, they "render the producing party the final arbiter of whether it has complied with its discovery obligations" by denying the requesting party "sufficient information to understand either the scope of the objection, or to frame any argument as to why that objection is unfounded." *Id.*

*First*, Defendants' requests do not impose a disproportionate or undue burden.

While Dr. Brown and Plaintiff's counsel generally assert that the requests somehow impose a disproportionate burden on Dr. Brown, they have has failed to identify any particular burden—let alone an undue or unreasonable burden—associated with responding to Defendants' document requests. "On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). And the obligation to identify "specific facts showing the specific nature of the burden" rests with Dr. Brown, as the party opposing the subpoena. *Rhodes v. JLG Indus., LLC*, 1:13-cv-00872-TCB, 2015 WL 11199066, at *5 (N.D. Ga. Apr. 30, 2015). In particular, neither Dr. Brown nor Plaintiff appears "to have made any effort to estimate how much time and expense it would take to" comply with the requests. *Id.*; *see also Cobb Theatres III, LLC v. AMC Ent. Holdings, Inc.*, 1:14-cv-00182-ELR-WEJ, 2016 WL 4059684, at *4 (N.D. Ga. Feb. 25, 2016) (relying on specific costs of production cited by the producing party).

Beyond their lack of requisite specificity, Dr. Brown's burden objections are unfounded. Given the centrality of the documents to this dispute and the *de minimis* burden associated with re-producing material previously already produced in another litigation, material that is—based on Dr. Brown's objections—physically located together in Dr. Brown's basement, it cannot be that the burden imposed on

Dr. Brown is disproportionate to Defendants' need to defend themselves against Sight Sciences' allegations. Dr. Brown is, after all, a current C-suite executive of Plaintiff Sight Sciences. And Dr. Brown, who is a named inventor on several prior art references, is the only source of this information, which—again—pre-dates his employment with Plaintiff. In addition to seeking damages in the form of lost profits or a reasonable royalty—a number that Sight will likely assert will be in the tens of millions of dollars—Sight is also seeking a permanent injunction to remove Hydrus from the market altogether. Thus, "the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to the relevant information" all bear against any hint of a disproportionate or undue burden here. Fed. R. Civ. P. 26(b)(1).

Further, Dr. Brown's attempts to raise issues of relative access are wrong on the facts. In suggesting that Defendants already have this information or could access it more easily via some other means, the response incorrectly assumes that Defendants made no other attempts to obtain discovery produced by Dr. Brown in the *Glaukos* litigation. In fact, Defendants have undertaken such efforts. As explained in the Bova Declaration, neither Defendants nor the lawyers who represented them in the *Glaukos* litigation have access to the documents produced by Dr. Brown in that case because the protective order in that litigation required the

16

parties to destroy those materials at the conclusion of the litigation.[18] Further, though Defendants have tried, Defendants have been unable to confirm from Glaukos' counsel whether they have the materials or, if so, are willing to produce them.[19] Defendants cannot now be punished for their compliance with the order of the *Glaukos* Court.

*Second*, the requests are temporally reasonable. Following a request made on June 9, 2023[20] and again on June 12, 2023[21]—almost three weeks before the June 29, 2023 close of discovery[22]—Plaintiff's counsel accepted service of the subpoena to Dr. Brown on Wednesday, June 14, 2023.[23] The Subpoena, dated June 9, 2023, imposed a June 23, 2023, production deadline, [24] giving Dr. Brown 14 days in which to respond. Fourteen days is not unreasonable to produce material already produced once before.

Defendants naturally understand they are not entitled to truly privileged information, nor do they expect Dr. Brown to produce material outside of his

---

[18] Bova Declaration, ¶ 5.

[19] Bova Declaration, ¶ 6.

[20] June 9, 2023, Email from Molly Portwood to Orion Armon, et al., attached as Exhibit 9.

[21] June 14, 2023 Email from Lauren Strosnick to Austin C. Teng, et al., attached as Exhibit 8.

[22] *Sight Sciences* Litigation Scheduling Order at 2.

[23] June 14, 2023 Email from Lauren Strosnick to Austin C. Teng, et al.

[24] Defendants' Subpoena at 1.

possession, custody, or control. The Federal Rules make plain that such information is not within the scope of discoverable information. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter …." (emphasis added)). But if Plaintiff or Dr. Brown are withholding information based on a privilege objection, both the Federal Rules and Northern District of Georgia precedent requires that their responses be more specific. Where "the factual basis for" a privilege assertion is not apparent on the objection', a withholding party must "provid[e] 'an accompanying explanatory affidavit from counsel'" or otherwise show what "the primary motivating purpose" was for the document's creation, so as to establish the application of a privilege or protection. *Luc v. Korean Air Lines Co.*, No. 1:18-CV-5900-LMM, 2019 WL 7824693, at *1 (N.D. Ga. May 31, 2019) (quoting *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007)). Dr. Brown has not remotely satisfied that obligation.

## CONCLUSION

For the foregoing reasons, the Court should compel Dr. Reay Brown to respond to Defendants' subpoena and produce documents no later than July 31, 2023.

Respectfully submitted this 29th day of June, 2023.

*[Signature on following page.]*

18

Gregg Locascio
gregg.locascio@kirkland.com
Justin Bova
justin.bova@kirkland.com
Steven Dirks
steven.dirks@kirkland.com
Socrates Boutsikaris
socrates.boutsikaris@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004

Kat Li
kat.li@kirkland.com
Austin C. Teng
austin.teng@kirkland.com
Jeanne M. Heffernan
jheffernan@kirkland.com
Ryan J. Melde
ryan.melde@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701

Ryan Kane
ryan.kane@kirkland.com
Laura Zhu
laura.zhu@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022

*/s/ Amanda Kay Seals*
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Fredric J. Bold, Jr.
Georgia Bar No. 544604
Bold@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I certify that the foregoing document has been prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(B).

I further certify, pursuant to Local Rule 37.1(A)(1), that counsel has complied with the duty to confer required by Federal Rule of Civil Procedure 37(a)(2)(A)(B).

This 29th day of June, 2023.

*/s/ Amanda Kay Seals*
Amanda Kay Seals

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the within and foregoing **DEFENDANTS' MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, and served by U.S. first class mail and electronic mail as follows:

Cooley LLP
Michelle S. Rhyu
rhyums@cooley.com
David Murdter
dmurdter@cooley.com
Lauren Strosnick
lstrosnick@cooley.com
Alissa Wood
amwood@cooley.com
Cameron C. Vanderwall
cvanderwall@cooley.com
Angela R. Madrigal
amadrigal@cooley.com
Juan Pablo González
jgonzalez@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Cooley LLP
Orion Armon
oarmon@cooley.com
1144 15th Street, Suite 2300
Denver, CO 80202-2686
(720) 566-4000

Certificate of Service Page 1

*Attorneys for Sight Sciences, Inc.*

This 29th day of June, 2023.

/s/ Amanda Kay Seals
Amanda Kay Seals
Georgia Bar No. 502720