# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SIGHT SCIENCES, INC., | |
| Plaintiff, | Case No.:  1:23mi59-LMM-JCF |
| v. | Underlying Litigation: |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | Case No. 21:1317-GBW-SRF United States District Court District of Delaware |
| Defendants. | |

## DR. REAY BROWN'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL NON-PARTY DISCOVERY

# TABLE OF CONTENTS

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.    The Pre-June 2019 Collection and Production of Dr. Brown's Materials in the Glaukos Litigation......................................................2

    B.    Defendants' Untimely, Overbroad Subpoena to Dr. Brown in the Sight Litigation .............................................................................5

II.   ARGUMENT AND CITATION TO AUTHORITY ...................................11

    A.    Defendants' Unexplained Delay Warrants Quashing the Subpoena ........................................................................................11

    B.    The Brown Subpoena is Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case........................................15

        1.    The Subpoena's Requests are Overbroad and Irrelevant.........16

        2.    The Time and Cost Required for Production is Enormous .....19

    C.    The Requested Discovery is Futile Given the Stage of the Underlying Sight Litigation ...............................................................22

    D.    If Any Discovery is Permitted, the Fees and Costs of Compliance Should Be Wholly Shifted to Defendants.....................23

    E.    If the Motion is Granted, Dr. Brown Would Require at Least 3.5 Months to Comply........................................................................24

III.  CONCLUSION..........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bitpay, Inc. v. Mass. Bay Ins. Co.*,
 315 F.R.D. 698 (N.D. Ga. 2016) ........................................................................16

*BMO Harris Bank, N.A. v. Richert Funding, LLC*,
 No. 1:15-CV-3886-AT, 2017 WL 11627485 (N.D. Ga. July 3,
 2017) ..................................................................................................................21

*Bridgestone Ams., Inc. v. IBM*,
 No. 1:16-cv-2618-TCB-JKL, 2017 U.S. Dist. LEXIS 229583 (N.D.
 Ga. June 16, 2017) .............................................................................................24

*Eli Rsch., LLC v. Must Have Info., Inc.*,
 No. 2:13-cv-695-FtM-38CM, 2015 WL 4694046 (M.D. Fla. Aug.
 6, 2015) ..............................................................................................................15

*Glaukos Corporation v. Ivantis, Inc.*,
 No. 8:18-cv-00620-JVS-JDE (C.D. Cal.) .....................................................*passim*

*Kurtzon v. Sterling Indus., Inc.*,
 227 F. Supp. 393 (E.D. Pa. 1964) .................................................................. 18-19

*Mirtech, Inc. v. Agrofresh, Inc.*,
 C.A. No. 20-1170-RGA, 2023 WL 3996618 (D. Del. June 14,
 2023) ..................................................................................................................23

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*,
 881 F.3d 1293 (11th Cir. 2018) ..........................................................................20

*Panola Land Buyers Ass'n v. Shuman*,
 762 F.2d 1550 (11th Cir. 1985) ..........................................................................21

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pushko v. Klebener*,
No. 3:05-cv-211-J-25HTS, 2007 WL 2671263 (M.D. Fla. Sept. 7,
2007) ........................................................................................................14, 15

*Se. Mech. Servs., Inc. v. Brody*,
No. 1:09-CV-0086-GET-SSC, 2009 WL 3095642 (N.D. Ga. June
22, 2009) ........................................................................................................16

*Sight Sciences, Inc. v. Ivantis, Inc.*,
No. 1:21-cv-1317-GBW-SRF, D.I. 1 (D. Del. Sept. 16, 2021) ..................*passim*

*Smith v. Pefanis*,
No. 1:08-CV-1042-JOF-RGV, 2008 WL 11333335 (N.D. Ga. Oct.
30, 2008) ........................................................................................................17

*In re Subpoena Issued to OneSource Orthopedics, Inc.*,
No. 1:10-CV-01782-JEC-GGB, 2010 WL 11508011 (N.D. Ga.
Aug. 3, 2010) ........................................................................................................16

*Tradebank Int'l Franchising Corp. v. Fla. Barter Exch., LLC*,
No. 1:12-CV-2810-RLV-JSA, 2014 WL 12861198 (N.D. Ga. May
13, 2014) ........................................................................................................18

*U.S. CFTC v. Am. Derivatives Corp.*,
No. 1:05-CV-2492-RWS, 2007 WL 1020838 (N.D. Ga. Mar. 30,
2007) ........................................................................................................ 21-22

*United States v. Dowdell*,
70 F.4th 134 (3d Cir. 2023) ..............................................................................23

*Urim Corp. v. Krongold*,
1:05-cv-633-GET, 2006 WL 2224012 (N.D. Ga. Aug. 2, 2006) ......................21

*Weems Indus., Inc. v. Teknor Apex Co.*,
   No. 1:22-cv-01399-SEG-CMS, 2022 WL 19332037 (N.D. Ga.
   May 16, 2022) ................................................................................................. 18

**Other Authorities**

Fed. R. Civ. P.
   Rule 26(b)(1) ........................................................................... 15, 16, 18
   Rule 45 ................................................................... 1, 3, 10, 12, 14, 23

The Court should deny Defendants' Motion to Compel ("Motion" of "Mot.") compliance with the subpoena *duces tecum* served on non-party Dr. Reay Brown ("Brown Subpoena") for three reasons:

***First***, the Subpoena violates Rule 45(d) because Defendants were not diligent in pursuing the discovery they now seek.  Defendant Ivantis has been aware of Dr. Brown's documents since at least June 2019 in connection with the *Glaukos* Litigation,[1] and possessed the ***exact same documents Defendants now seek*** for at least ***two months*** between the commencement of the underlying litigation ("*Sight* Litigation") and any requirement to destroy the documents in the *Glaukos* Litigation. Yet Ivantis did nothing to attempt to retain a copy of those documents for use in the *Sight* Litigation.

***Second***, the Brown Subpoena seeks irrelevant documents and is overbroad, unduly burdensome, and disproportionate to the needs of the case.  It would cost hundreds of thousands of dollars and require at least 3.5 months to collect, process, review, and produce the requested documents and communications.   Rule 45 prohibits imposing such disproportionate burdens on a non-party, natural person.

---

[1] *Glaukos Corporation v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE (C.D. Cal.) ("*Glaukos* Litigation").

***Third***, the requested discovery is futile due to Defendants' extreme delay and the stage of the underlying case. Defendants will be unable to use any discovery they obtain because the discovery sought could not reasonably be provided before December 2023, which is far too late. Fact discovery already closed on June 29, and both parties already served opening expert reports on July 13. And Defendants already requested (and were denied) a modification of the schedule to accommodate discovery obtained after the fact discovery deadline. What's more, they separately acknowledged that the underlying case schedule will not change as a result of any discovery they obtain from Dr. Brown. It would be unjust and grossly disproportionate to compel Dr. Brown to shoulder the enormous burdens required to respond to the subpoena because there would be ***no*** corresponding benefit.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Pre-June 2019 Collection and Production of Dr. Brown's Materials in the *Glaukos* Litigation

In April 2018, Glaukos accused Ivantis of infringing two patents[2] claiming devices and methods invented by Dr. Brown and his wife, fellow ophthalmologist

---

[2] U.S. Patent Nos. 6,626,858 and 9,827,143 ("*Glaukos* Asserted Patents").

Dr. Mary Lynch.  (Ex. A (*Glaukos* Litigation, D.I. 1), ¶¶ 1, 21, 33-48.)[3]  These patents

were initially assigned to GMP Vision Solutions, Inc. ("GMP"), a company that

acquired the patents from Dr. Brown and Dr. Lynch to commercialize EyePass, an

implantable device for treating glaucoma.  (*Id.*, ¶¶ 35, 43.)  Glaukos purchased the

rights to the *Glaukos* Asserted Patents from a successor-in-interest to GMP, without

Dr. Brown's or Dr. Lynch's approval.  (*See id*.)  Dr. Brown was never an employee

of Glaukos but served as a third-party consultant in the *Glaukos* Litigation.  In that

case, Ivantis obtained discovery from Dr. Brown, including receiving document

productions and thereafter taking his deposition on June 8, 2019.  (*See* Ex. B

(6/8/2019 Brown Dep. Tr., produced in the *Sight* Litigation as

IVANTIS_SS_00455264-445).)  These document productions, which occurred

between May and June 2019, resulted from Glaukos's comprehensive collection of

eight computers (including six decommissioned computers stored in the basement)

and numerous boxes of voluminous paper files from Dr. Brown and Dr. Lynch's

home.  (*Id.* at 103:17-104:20 (referring to " ███████████████████████████

████████████████████████████████████████████████████████

---

[3] All references to "Ex. A" through "Ex. V" in this brief are to the exhibits attached
to Dr. Reay Brown's Response in Opposition to Defendants' Motion to Compel Non-
Party Discovery.



"); *see also* Ex. C (6/8/2019 Lynch Dep. Tr. (IVANTIS_SS_00455446-685)) at 19:20-22:23 (referring to ") (further noting that the collection occurred ).)[4]   Dr. Brown does not (and never had) access to the document productions in the *Glaukos* Litigation.

According to Defendants' Motion, "[n]either Ivantis nor its prior counsel has access to these relevant documents and testimony because the protective order in the *Glaukos Litigation* required destruction post-disposition."   (Mot. at 5.)   The protective order entered in the *Glaukos* Litigation provides:

> 15. FINAL DISPOSITION After the final disposition of this Action, as defined in paragraph 6, ***within 60 days of a written request by the Designating Party***, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. . . . Notwithstanding this provision, ***Counsel are entitled to retain an archival copy*** of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, ***deposition*** and trial ***exhibits***, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.

---

[4] Of the eight computers collected in the *Glaukos* Litigation, four belonged to Dr. Brown—his current computer and three decommissioned computers.  The other four computers belonged to Dr. Lynch.

(Mot., Ex. 2 (D.I. 36), ¶ 15 (emphasis added).)[5]

Final disposition of the *Glaukos* Litigation occurred on or shortly after September 23, 2021.  (Ex. D (D.I. 855 (Joint Stipulation of Dismissal with Prejudice)).)  Thus, the earliest date by which destruction of Protected Material would have been required was November 22, 2021 (*i.e.*, 60 days after September 23, 2021).  Further, the *Glaukos* protective order expressly permits counsel to "retain an archival copy of . . . deposition . . . exhibits."  (Mot., Ex. 2 (D.I. 36), ¶ 15.)  During Dr. Brown's June 8, 2019 deposition, counsel for Ivantis marked 25 exhibits, many of which appear to be documents collected from Dr. Brown.  (*See* Ex. B (6/8/2019 Brown Dep. Tr.) at 2-4.)

## B.   Defendants' Untimely, Overbroad Subpoena to Dr. Brown in the *Sight* Litigation

Sight Sciences, Inc. ("Sight") filed its original complaint against Ivantis in the underlying litigation on September 16, 2021, ***prior to*** dismissal of the *Glaukos* Litigation.  (Ex. E (*Sight Sciences, Inc. v. Ivantis, Inc.*, No. 1:21-cv-1317-GBW-SRF, D.I. 1 (D. Del. Sept. 16, 2021)); *cf.* Ex. D (D.I. 855.)  Ivantis was served on September 20, 2021 (Ex. F (D.I. 7)) and its local counsel, David Fry of Shaw Keller,

_____

[5] All references to "Mot., Ex. 1" through "Mot., Ex. 9" in this brief are to exhibits attached to Defendants' Motion to Compel Non-Party Dr. Reay Brown to Comply with Subpoena, filed on June 29, 2023.

entered a stipulation to extend time to respond on September 21, 2021 (Ex. G (D.I. 8)).  Outside counsel for Ivantis first appeared on November 17, 2021.  (Ex. H (D.I. 11).)  Alcon Research LLC, Alcon Vision LLC, and Alcon Inc. were added as defendants on August 1, 2022.  (Ex. I (D.I. 59).)

Ivantis's Initial Disclosures served on May 24, 2022 identify Dr. Brown as an "individual[] who may have discoverable information" regarding "[i]nformation about the scope of the prior art."  (Mot., Ex. 3, at 2-3.)  On June 14, 2022, pursuant to ¶ 3(a) of the Delaware Default Standard for Discovery ("Paragraph 3 Disclosures"), Sight disclosed its ten custodians "most likely to have discoverable information in their possession, custody, or control."  (Ex. J at 2-3.)  These ten custodians did not include Dr. Brown (*see generally id.*) because, while Dr. Brown is employed part-time by Sight as Chief Medical Officer, Sight does not have possession, custody, or control of his documents from prior employment.  Indeed, Dr. Brown's confidentiality and privilege objections as to his prior employment

records run to the successors-in-interest of his prior employer GMP—*e.g.*, Glaukos—not to Sight.[6,7]

Defendants' Initial Invalidity Contentions dated September 1, 2022 rely upon four patents or patent publications naming Dr. Brown as an inventor. (Ex. M at 5-7, 11.) Defendants' October 6, 2022 First Supplemental Invalidity Contentions and June 29, 2023 Second Supplemental Invalidity Contentions rely upon the same four patents or patent publications by Dr. Brown (Ex. N at 6, 7, 11); the June 29, 2023 contentions add a fifth patent by Dr. Brown and extensive citations to Dr. Brown's EyePass device (Ex. O at 6, 7, 11, 19, 23-28, 30-79).

On April 21, 2023, Defendants stated that they would notice Dr. Brown for deposition in the *Sight* Litigation. (Ex. P (4/21/2023 J. Bova Email).) On April 27, 2023, Sight offered Dr. Brown for deposition on June 29. (*Id.* (4/27/2023 O. Armon

---

[6] Defendants made a belated request on May 26, 2023 for Sight to produce **Sight business records** relating to Dr. Brown, but by that point, each party had already collected and produced documents from the Delaware court's limit of 10 custodians. (Ex. K (5/26/2023 J. Bova Email).) Sight offered to add Dr. Brown as an eleventh custodian if Defendants agreed to add Mr. Kenneth Galt as a reciprocal eleventh custodian, but Defendants never responded to that offer. (Mot., Ex. 8 at 1.)

[7] Defendants are incorrect in asserting that "one would expect that an eyecare company's CMO would have been the custodian on at least *one* document in some non-custodial database searched." (*See* Mot. at 7 n.9.) It is commonly known that non-custodial data sources are not specifically identified with an individual custodian, so this argument is mistaken. (Ex. L (Declaration of Ross Mecham), ¶ 5.)

Email).)  Nearly one month later, on May 22, Defendants confirmed Dr. Brown's deposition for June 29.  (*Id.* (5/22/2023 A. Teng Email).)  Defendants served the instant document request subpoena on Dr. Brown on June 9.  (Mot., Ex. 6.)  On June 22, Defendants asked to reschedule Dr. Brown's deposition, expressly agreeing that "rescheduling Dr. Brown's deposition to a time after the close of fact discovery will not affect case deadlines."  (Ex. Q (6/22/2023 J. Bova Email); *id.* (6/23/2023 J. Bova Email).  Dr. Brown served his responses and objections to the Brown Subpoena on June 23, stating that he would not produce any documents in response to the requests. (Mot., Ex. 7.)

In a discovery letter filed on June 27, Defendants moved to "partially extend the case schedule to accommodate depositions occurring after the close of fact discovery."  (Ex. T (D.I. 242) at 1.)  Defendants failed to mention the Brown deposition or Brown Subpoena, even though the scheduling conflicts they presented were apparent and ripe for dispute.  (*Id.* (D.I. 242) at 3-4.)  In any event, on July 3, the Delaware court ***denied*** Defendants' motion to amend the case schedule to accommodate late discovery.  (Ex. U (D.I. 231), ¶ 36; *see also id.*, ¶ 24.)

The fourteen (14) document requests in the Brown Subpoena span a wide range of issues and are largely unrestricted in time, many seeking documents "prior

to October 23, 2018" (*i.e.*, prior to the date Dr. Brown began working as Sight's Chief Medical Officer[8]):

- Request No. 1:  All Documents and communications prior to October 23, 2018, relating to EyePass, including documents relating to its implantation into humans, its effect on reducing intraocular pressure, its effect on increasing aqueous outflux, its dimensions, and its materials of construction.
- Request No. 2:  All Documents and communications prior to June 26, 2006 relating to implants delivered into Schlemm's canal for treating glaucoma by, for example, reducing intraocular pressure or improving aqueous outflow.
- Request No. 3:  All Documents and communications relating to implanting nitinol coils into humans or primates, including the design of any such coils.
- Request No. 4:  All communications with Sight Sciences (including any of its employees such as Paul Badawi or David Badawi) prior to October 23, 2018.
- Request No. 5:  All communications with Ivantis (including any of its employees such as David Van Meter, Andy Schieber, Ken Galt, Mike Chodzko, or Todd Abraham) prior to October 23, 2018.[9]
- Request No. 6:  All communications with Alcon (including any of its employees such as James Teague or Richard Beckman) prior to October 23, 2018.
- Request No. 7:  All communications between you and Glaukos Corporation (including any of its employees) prior to October 23, 2018.

---

[8] Ex. R, *Reay H. Brown, M.D., Joins Sight Sciences as Chief Medical Officer*, Sight Sciences (Oct. 23, 2018) https://www.sightsciences.com/us/reay-h-brown-m-d-joins-sight-sciences-as-chief-medical-officer/.

[9] Dr. Brown's lack of response to Request No. 5 was an inadvertent omission. (*See* Mot. at 9 n.11.) Dr. Brown's objections and response to Request No. 5 are the same as his objections and responses to the other Requests. (*E.g.*, Mot., Ex. 7 at 9-11.) Additionally, Request No. 5 is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks "[a]ll communications." (*See* Mot., Ex. 6 at 7.)

- <u>Request No. 8</u>: All communications between you and Gmp Vision Solutions Inc. or GMP Companies, Inc. (including any of either of their employees) prior to October 23, 2018.

- <u>Request No. 9</u>: All Documents provided by you to any party in the *Glaukos Corporation v. Ivantis, Inc.*, 8:18-cv-00620-JVS-JDE litigation in the United States District Court for the Central District of California.

- <u>Request No. 10</u>: All Documents and communications prior to October 23, 2018 relating to devices invented by Robert Stegmann or Hans Grieshaber (*e.g.*, in WO2006066103, U.S. Patent No. 6,375,642, U.S. Pub. No. 2002/0013546, or any applications or patents related thereto) relating to delivering viscoelastic into the eye or delivering any devices into Schlemm's canal.

- <u>Request No. 11</u>: All Documents and communications prior to October 23, 2018 relating to your efforts to inform or instruct others regarding the implantation, use, advantages, or disadvantages of the Hydrus Microstent.

- <u>Request No. 12</u>: All Documents and communications prior to October 23, 2018 regarding the combined use of a Schlemm's canal implant with any product used, designed, or indicated for the delivery of viscoelastic fluid in the eye.

- <u>Request No. 13</u>: All Documents sufficient to show all payments or compensation you have received from Sight Sciences prior to October 23, 2018.

- <u>Request No. 14</u>: All Documents sufficient to show all payments or compensation you received, if any, for the sale of your patent rights to Gmp Vision Solutions Inc., GMP Companies, Inc., or Glaukos Corporation.

Fact discovery closed on June 29, 2023. (Mot., Ex. 4 (D.I. 93), ¶ 2.) On July 13, 2023, Defendants served their opening expert reports regarding invalidity, collectively spanning 723 pages, relying extensively on three of Dr. Brown's patents or patent publications as well as Dr. Brown's EyePass device. (Ex. S (D.I. 245).) Rebuttal expert reports are due August 17, 2023; reply expert reports are due September 7, 2023; and expert discovery closes on September 28, 2023. (Mot., Ex.

4 (D.I. 93) at 18.)  Case dispositive and *Daubert* motion briefing will be completed by November 16, 2023.  (*Id.*)  A jury trial is set to begin April 8, 2024.  (*Id.*)

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A.     Defendants' Unexplained Delay Warrants Quashing the Subpoena

The Court should deny Defendants' motion based on Defendants' lack of diligence in seeking documents from Dr. Brown.  Rule 45(d)(1) requires that a party issuing a subpoena "***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1) (emphasis added).  Here, Defendants have taken ***no*** reasonable steps to shield Dr. Brown, a third party, from undue burden or expense.

Defendants state that they are "willing to settle for Dr. Brown producing the materials he has already searched for and produced in the prior Glaukos litigation." (Mot. at 3.)  But Ivantis or its counsel possessed the exact same documents they now seek—*i.e.*, Dr. Brown's produced documents from the *Glaukos* Litigation—for at least ***two months*** between the filing of Sight's Complaint on September 16, 2021 (and the first appearance by Ivantis counsel on September 21, 2021) and the deadline to destroy documents pursuant to the *Glaukos* protective order, which at earliest would have been November 22, 2021.  (*See supra* § I.A.)  During those two months, Ivantis was well-aware of Dr. Brown and the information he possessed, based at least

on his "omnipresence in the glaucoma field" and "cent[ral]" role in the *Glaukos* Litigation.  (*See* Mot. at 4.)  Ivantis or its counsel could have sought relief from the *Glaukos* court (C.D. Cal.)—or permission from Dr. Brown or Glaukos—to retain a copy of productions Glaukos made on Dr. Brown's behalf for use in the *Sight* Litigation.  Instead, Ivantis sat on its hands and then destroyed the exact same documents it now seeks.  (Mot. at 16-17.)  The *Glaukos* protective order expressly permits counsel to "retain an archival copy of . . . deposition . . . exhibits," including the 25 exhibits marked during Dr. Brown's deposition—many of which appear to be documents collected from Dr. Brown.  (Mot., Ex. 2 (D.I. 36), ¶ 15; Ex. B (6/8/2019 Brown Dep. Tr.) at 2-4.)  Yet, Ivantis apparently chose not to retain those files either, even though it was permitted by the protective order.  (*See* Mot. at 5.)

From the *Glaukos* Litigation, and especially from Dr. Brown's deposition testimony, Ivantis and its counsel were fully aware of the large volume of GMP business records maintained by Dr. Brown at his home.  (Ex. B (6/8/2019 Brown Dep. Tr.) at 103:17-104:20; *see also* Ex. C (6/8/2019 Lynch Dep. Tr.) at 19:20-22:23.)  Despite this knowledge, Ivantis took no reasonable steps to avoid or reduce the burden of requiring Dr. Brown to re-collect, re-process, and re-produce those documents in the *Sight* Litigation.  Rule 45(d)(1) obligated Ivantis to make reasonable efforts to retain copies of the document productions it received from Dr.

Brown, and it had ample opportunity to do so over at least a two-month period. Taken alone, Ivantis's failure to comply with Rule 45(d)(1)'s requirements provides ample justification for denying any relief.

Defendants also violated Rule 45(d)(1) by failing to make reasonable efforts to obtain Dr. Brown's document production in the *Glaukos* Litigation from Glaukos's counsel. Defendants' Motion merely states that they have "attempted to confirm with Glaukos'[s] counsel whether they too no longer have these materials, but to-date have not received a clear response." (Mot. at 5; *see also* Mot., Ex. 1 (Bova Decl.), ¶ 6 (providing no details regarding the correspondence with Glaukos' counsel).) Ivantis and its counsel knew that Glaukos collected, reviewed, and produced Dr. Brown's documents in the *Glaukos* Litigation, owns Dr. Brown's patent rights, and asserts confidentiality rights over information in Dr. Brown's records. (Ex. B (6/8/2019 Brown Dep. Tr.) at 13:7-14:7.) Thus, contrary to Defendants' assertion, Dr. Brown is not the "only source" of the requested information. (*See* Mot. at 16.) Defendants failed to subpoena Glaukos or take any other diligent, reasonable steps to obtain the discovery they seek from Glaukos. This violation, too, provides a standalone basis for denial.

Defendants' actions (and inaction) in the *Sight* Litigation further demonstrate a lack of diligence in pursuing discovery from Dr. Brown. As noted, Ivantis knew

for years before the inception of the *Sight* Litigation about Dr. Brown and the records he holds.  After the Sight Litigation commenced, Ivantis identified Dr. Brown on its May 24, 2022 Initial Disclosures as an "individual[] who may have discoverable information" regarding "[i]nformation about the scope of the prior art."  (Mot., Ex. 3, at 2-3.)[10]  Defendants' Initial Invalidity Contentions, served over 10 months ago, rely upon four patents or patent publications by Dr. Brown; and their Second Supplemental Invalidity Contentions add a fifth Dr. Brown patent as well as his EyePass device.  (Ex. M at 5-7, 11; *see also* Ex. O at 6, 7, 11, 19, 23-28, 30-79.) Nevertheless, without any explanation, Defendants waited until June 9, 2023 to serve a document subpoena on Dr. Brown.  *See Pushko v. Klebener*, No. 3:05-cv-211-J-25HTS, 2007 WL 2671263, at *2 (M.D. Fla. Sept. 7, 2007) (denying motion to compel based on a "lack of diligence" when document subpoena was served one month before the close of fact discovery because, *inter alia*, "[t]here has been ample opportunity to conduct discovery in this case" and the serving party "should have been aware . . . of the additional discovery [it] wished to pursue").  And the instant

---

[10] Sight added Dr. Brown to its Initial Disclosures on March 22, 2023 (Mot. at 6) because Ivantis included him on its Initial Disclosures.  The fact that Dr. Brown is not listed as a custodian on any produced document (*id.* at 6-7 & n.9) likewise misses the point; Dr. Brown was not identified as a custodian under Sight's Paragraph 3 Disclosures because Sight (appropriately) does not have possession, custody, or control of Dr. Brown's prior employment records.  (*See* Ex. J at 2-3.)

Motion was filed on the very last day of fact discovery in the *Sight* Litigation. *See id.* ("Motions to compel must be brought in a timely manner."); *see also Eli Rsch., LLC v. Must Have Info., Inc.*, No. 2:13-cv-695-FtM-38CM, 2015 WL 4694046, at *2 (M.D. Fla. Aug. 6, 2015) (denying motion to compel filed three days after discovery closed because "the Court is not inclined to reopen discovery due to Plaintiffs' lack of diligence").

In light of Defendants' repeated violations of Rule 45(d)(1), including Ivantis's failure to seek relief before destroying the copies of Dr. Brown's productions it possessed in the *Glaukos* Litigation, failure to subpoena Glaukos to obtain Dr. Brown's *Glaukos* Litigation productions from Glaukos, and inexcusable nearly two-year delay in serving a subpoena on Dr. Brown in the *Sight* Litigation, there is no justification for requiring Dr. Brown to provide discovery Defendants already had or could have obtained without burdening him. *E.g.*, *Pushko*, 2007 WL 2671263, at *2; *Eli Rsch.*, 2015 WL 4694046, at *2.

### B.     The Brown Subpoena is Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case

The Brown Subpoena fails the proportionality test imposed by Rule 26(b)(1) because the requested documents' purported potential relevance is dwarfed by the exceedingly high burden of complying with the subpoena. Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case"). When ruling on motions

to compel a third party to comply with a document request subpoena, courts weigh the probative value of the requested discovery against the burden of compliance. *See Se. Mech. Servs., Inc. v. Brody*, No. 1:09-CV-0086-GET-SSC, 2009 WL 3095642, at *3 (N.D. Ga. June 22, 2009).  When evaluating undue burden, courts consider factors such as "the relevance of the information requested, the requesting party's need for the documents, the breadth of the document request, the time period covered by the request and the burden imposed, including the expense and inconvenience to a non-party to whom the request was made." *In re Subpoena Issued to OneSource Orthopedics, Inc.*, No. 1:10-CV-01782-JEC-GGB, 2010 WL 11508011, at *3 (N.D. Ga. Aug. 3, 2010) (citation omitted).  When "the burden or expense of the proposed discovery outweighs its likely benefit," the Court must limit discovery. Fed. R. Civ. P. 26(b)(1); *see also Brody*, 2009 WL 3095642, at *2 n.2.  Discovery must also be "proportional to the needs of the case"; therefore, even potentially relevant evidence may be beyond the scope of discovery.  Fed. R. Civ. P. 26(b)(1); *see also Bitpay, Inc. v. Mass. Bay Ins. Co*., 315 F.R.D. 698, 701 (N.D. Ga. 2016).

### 1.  The Subpoena's Requests are Overbroad and Irrelevant

Defendants' Motion should be denied because they failed to make any particularized showing of the purported relevance of the information they seek. Defendants vaguely assert that "[t]he requested documents are highly relevant to

Defendants' defenses in the underlying litigation, including its non-infringement, invalidity, and damages defenses." (*See* Mot. at 2.) But this assertion is belied by overbreadth of the Brown Subpoena's requests and the remainder of their Motion, which reveals that the purported relevance of the information is purely speculative and not tied to any specific documents known to be in Dr. Brown's possession. (*E.g.*, *id.* at 6 ("His representations would also be relevant to issues of damages, *if* Dr. Brown has attributed any value to his work."); *id.* ("Further, *if* Dr. Brown communicated with Sight Sciences about his patent portfolio and his efforts in the *Glaukos* litigation, where his patents were also asserted against Ivantis' Hydrus, his representations ***potentially*** rebut Sight Sciences' willful infringement allegations.") (emphasis added to all).)

The overbroad and unfocused document requests in Defendants' subpoena amount to an improper fishing expedition by seeking "all documents" and/or "all communications" pertaining to broad categories of topics that are largely unbounded in time. Courts in this jurisdiction refuse to enforce such overbroad requests, especially when directed at a non-party. (*See supra* § I.B.) *E.g.*, *Smith v. Pefanis*, No. 1:08-CV-1042-JOF-RGV, 2008 WL 11333335, at *4 (N.D. Ga. Oct. 30, 2008) (granting motion to quash subpoena because "allowing defendants unfettered access to [third party's] personal cell phone records would enable them to conduct a fishing

expedition based on an overly broad subpoena."); *Tradebank Int'l Franchising Corp. v. Fla. Barter Exch., LLC*, No. 1:12-CV-2810-RLV-JSA, 2014 WL 12861198, at *7 (N.D. Ga. May 13, 2014) (granting motion to quash subpoenas seeking "all communications . . . over a four year period" as a "fishing expedition"); *Weems Indus., Inc. v. Teknor Apex Co.*, No. 1:22-cv-01399-SEG-CMS, 2022 WL 19332037, at *2-3 (N.D. Ga. May 16, 2022) (granting motion to quash subpoena seeking discovery regarding "[third party's] internal communications regarding [plaintiff] and communications with [defendant] or third parties" because it "amount[s] to a mere fishing expedition"); *cf.*, *e.g.*, Mot., Ex. 6 at Request No. 5 (broadly seeking "[a]ll communications with Ivantis (including any of its employees such as David Van Meter, Andy Schieber, Ken Galt, Mike Chodzko, or Todd Abraham) prior to October 23, 2018").

Nor are the requested documents relevant to Defendants' prior art patent invalidity defenses. Defendants already have the prior art they need for their invalidity defense, including several Dr. Brown references. By definition, prior art must be publicly available; thus, Dr. Brown's published works and patents are equally accessible to Defendants, and his non-public business records are not prior art and therefore are irrelevant. *See* Fed. R. Civ. P. 26(b)(1) (discovery is limited by "the parties' relative access to relevant information"); *see also Kurtzon v. Sterling*

*Indus., Inc*., 227 F. Supp. 393, 394 (E.D. Pa. 1964).   Furthermore, Defendants already selected their asserted prior art in the *Sight* Litigation, including three of Dr. Brown's patents or patent publications.  *See supra* § I.B.[11]

### 2.    The Time and Cost Required for Production is Enormous

Compliance with the Brown Subpoena would impose an enormous burden on Dr. Brown in terms of both time and cost.  Defendants' requests would require collection, review, and production of nearly 1,500 gigabytes of files from four computers (including three decommissioned computers) and approximately 100 pounds of paper files stored in Dr. Brown's home.  (*See generally* Mot., Ex. 7.) Additionally, Glaukos counsel has requested that Dr. Brown review the files for Glaukos confidential or privileged information, and apply redactions accordingly, which would substantially increase the time and cost of production.  (Ex. V (7/6/2023 L. Glasser Email).)

Collection, processing, review, and production of the requested electronically stored information ("ESI") from Dr. Brown's four computers would be costly and

---

[11] Additionally, the boxes of paper files collected from Dr. Brown in the *Glaukos* Litigation contain numerous GMP corporate documents, which are plainly irrelevant to Defendants' defenses in the *Sight* Litigation.  (Ex. C (6/8/2019 Lynch Dep. Tr.) at 19:20-22:23 (stating that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████

time-consuming.[12]  Dr. Brown's current computer contains 1.2 terabytes of ESI, and the three decommissioned computers likely contain about 200 gigabytes of ESI collectively, resulting in a total of about 1,400 gigabytes that would require extraction, collection, processing, review, and production.  (Ex. L (Declaration of Ross Mecham), ¶ 6.)  Based on a conservative estimate using standard ESI rates, and assuming the data on the decommissioned computers can even be extracted, the complete process from start to finish (*i.e.*, raw data to final production) would cost about $654,040 and require about 3.5 months[13] of work.  (Ex. L, ¶¶ 7-14; *id.* at Appendix A.)  This includes (1) collecting ESI from the four devices at $295/hour, (2) processing the 1,400 gigabytes of ESI at $25/gigabyte, (3) promoting the ESI to a review database at $100/gigabyte, (4) hosting the ESI at $10/gigabyte/month, (5) reviewing the documents at an average review rate of 30 documents per hour and $54/hour, and (6) preparing the productions at $250/gigabyte.  (*Id.*)  This total cost and time does not account for vendor project manager labor time, quality control efforts, and any necessary troubleshooting.  (*Id.*, ¶ 14.)  *See*, *e.g.*, *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018);

---

[12] Dr. Brown **cannot** "simply re-produce the material produced in the *Glaukos* litigation" (Mot. at 10) because he does not have possession of those productions.
[13] Assuming Dr. Brown is able to retain a document vendor by mid-August 2023, the earliest the documents could be produced is December 2023.  (Ex. L, ¶ X.)

*BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-CV-3886-AT, 2017 WL 11627485, at *12 (N.D. Ga. July 3, 2017) (affirming denial of motion to compel subpoena compliance and awarding fees when the requested documents would "result in a tremendous burden, require dozens of hours of review . . ., and cost [non-party] tens of thousands of dollars").

Contrary to Defendants' assertions, Dr. Brown's objections to Requests 1-14 are well-founded and satisfactory under governing case law. (*Cf.* Mot. at 8-11, 13-14.) Dr. Brown's objections detail the specific burden imposed by the subpoena— *e.g.*, "Dr. Brown possesses a large volume of paper and electronic records comprising approximately 100 pounds of paper files, along with documents and communications stored on three decommissioned computers stored in his basement, plus the computer he presently uses." (*See generally* Mot., Ex. 7.) This stands in stark contrast to the objections in the cases cited by Defendants, where, for example, the "recitation of expense and burdensomeness [were] merely conclusory." *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985); *see also Urim Corp. v. Krongold*, 1:05-cv-633-GET, 2006 WL 2224012, at *1 (N.D. Ga. Aug. 2, 2006) (listing general objections without any details specific to the case). Dr. Brown's objections are decidedly ***not*** "boilerplate," as they provide detailed facts specific to Dr. Brown's documents. (*See generally* Ex. 7); *cf. U.S. CFTC v. Am.*

*Derivatives Corp.*, No. 1:05-CV-2492-RWS, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007) (objections "[m]erely stat[ed] that a discovery request is vague or ambiguous, without specifically stating how it is so").  Furthermore, as explained above, Defendants have known for years about the magnitude of Dr. Brown's records, so the volume of information potentially covered by the Brown Subpoena was known to Defendants and is not speculative or in doubt.

### C. The Requested Discovery is Futile Given the Stage of the Underlying *Sight* Litigation

Defendants will have no use for the requested discovery by the time it could be produced.  As explained above, due to the undue burden of production, December 2023 is the earliest that Dr. Brown could collect, review, and produce the requested documents.  At that point, expert discovery and briefing on dispositive motions will be complete and the parties will be preparing for trial in April 2024.  It will be far too late for Defendants to inject Dr. Brown's documents into the record as evidence.

To be sure, the case schedule in the *Sight* Litigation cannot and will not be extended to account for the Brown Subpoena.  *First*, Defendants already tried and failed to extend the underlying litigation schedule, underscoring that they will not obtain any extension.  Ex. T (D.I. 242) at 3-4; *see also* Ex. U (D.I. 231) at ¶¶ 24, 36 (denying motion to extend).  *Second*, to compound that failure, Defendants forfeited any future right to extend the schedule to accommodate the Brown Subpoena by

22

failing to expressly address the Brown Subpoena in their motion, even though it had been served weeks before and Dr. Brown had already served responses and objections and refused to comply. *Mirtech, Inc. v. Agrofresh, Inc.*, C.A. No. 20-1170-RGA, 2023 WL 3996618, at *4 (D. Del. June 14, 2023) (citing *United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023)) (holding that an argument is forfeited when a party fails to timely raise it).  **Third**, Defendants have specifically agreed that the case schedule will not be altered due to discovery from Dr. Brown.  (Ex. Q (6/23/2023 J. Bova Email).)  Defendants will thus be unable to use any discovery they obtain from the Brown Subpoena as evidence in the *Sight* Litigation.  Given the futility of the Brown Subpoena and the irrelevance of the information it seeks to the underlying litigation, the Court should deny Defendants' Motion.

### D.   If Any Discovery is Permitted, the Fees and Costs of Compliance Should Be Wholly Shifted to Defendants

Defendants have not offered to cover Dr. Brown's expenses in complying with the subpoena.  Dr. Brown is a natural person, non-party, and does not possess the resources to pay for collection, review, and production of information responsive to the Subpoena.  And he is a practicing ophthalmologist who does not have the time to dedicate to attempting to personally respond to the Subpoena. Therefore, to the extent any discovery is permitted regarding the Brown Subpoena, Dr. Brown respectfully requests that the Court shift all fees and costs of compliance to Defendants, in

light of (i) Defendants' repeated and knowing violations of Rule 45(d)(1), (ii) the overbreadth of the Subpoena, (iii) Defendants' greater resources, and (iv) the futility of this discovery exercise in light of the case schedule in the Sight Litigation.  *E.g., Bridgestone Ams., Inc. v. IBM*, No. 1:16-cv-2618-TCB-JKL, 2017 U.S. Dist. LEXIS 229583, at *8-14 (N.D. Ga. June 16, 2017) (shifting "significant" costs to party serving third party subpoena).

### E.    If the Motion is Granted, Dr. Brown Would Require at Least 3.5 Months to Comply

Dr. Brown also would require *at least 3.5 months* to retain a vendor, have them evaluate the decommissioned computers, and then (if feasible) collect, process, review, and produce the documents.  (Ex. L, ¶ 14.)

## III.   CONCLUSION

The Court should deny the motion to compel compliance with the Brown Subpoena because the subpoena seeks irrelevant information and is untimely, overbroad, unduly burdensome, and not proportional to the needs of discovery in the underlying litigation.

Respectfully submitted, this 21st day of July 2023.

**WARGO, FRENCH & SINGER LLP**

*/s/ Heather H. Sharp*
HEATHER H. SHARP
Georgia Bar No. 671545
hsharp@wfslaw.com
K. TYLER DYSART
Georgia Bar No. 749676
tydsart@wfslaw.com
999 Peachtree Street, N.E., Suite 1120
Atlanta, Georgia 30309
Tel: (404) 853-1550
Fax: (404) 853-1501

Orion Armon (admitted *pro hac vic*)
COOLEY LLP
1144 15TH Street
Denver, CO 80202
Tel: (720) 566-4119
oarmon@cooley.com

*Attorneys for Dr. Reay Brown*

## RULE 7.1.D CERTIFICATE

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1.C.

*/s/ Heather H. Sharp*
HEATHER H. SHARP

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 21, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system, which will automatically serve all parties of record.

*/s/ Heather H. Sharp*
HEATHER H. SHARP