# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SIGHT SCIENCES, INC.,

        Plaintiff,

        v.

IVANTIS, INC., ALCON RESEARCH
LLC, ALCON VISION, LLC, and
ALCON INC.,

        Defendants.

Case No. 1:23-cv-03275-LMM-JCF

Underlying litigation:

Case No. 21:1317-GBW-SRF
United States District Court
District of Delaware

# REPLY IN SUPPORT OF DEFENDANTS'
# <u>MOTION TO COMPEL NON-PARTY DISCOVERY</u>

Defendants file this reply in support of their Motion to Compel enforcement of their subpoena *duces tecum* served on Dr. Reay Brown. *See* Dkt. 1.

Dr. Brown—the Chief Medical Officer of the company suing Defendants—refuses to produce a single document. This is a strategic roadblock his employer Sight Sciences, who shares the same counsel (Cooley) as Dr. Brown, has created to prevent discovery of relevant documents to Defendants' defense in the underlying litigation. Indeed, Dr. Brown's Response contains no evidence from Dr. Brown himself (*e.g.*, a declaration)—the person who would know best about his own documents that would be responsive to Defendants' subpoena and any alleged burden in collecting them. Instead, the only evidence of alleged "burden" is self-serving, coming from a Cooley attorney who claims to have reviewed photographs of Dr. Brown's computers to guess the volume of data stored. Dkt. 29, Ex. L at ¶ 6.

Dr. Brown's counsel makes three primary arguments. None of these arguments demonstrates the "particularly heavy burden" required to quash a subpoena. *Smartmatic USA Corp. v. Montgomery*, 2023 WL 4662241, at *3 (M.D. Fla. Jul. 20, 2023).

***First***, Dr. Brown's counsel argues that one of the four Defendants (Ivantis) in the underlying litigation should have had the foresight before it even filed its Answer to request permission from an opposing party (Glaukos) to grant an exception to the

1

protective order in that case so that Ivantis could have retained documents produced in that case. Dkt. 30 at 1. Even if discovery required that clairvoyance, this argument dodges a simple question that Dr. Brown has refused to answer: has he done anything to investigate whether he can access his prior production in the *Glaukos* litigation? This argument also ignores that the Alcon entities were not Defendants until almost a year after Ivantis was required to destroy documents from the *Glaukos* case, and Alcon cannot be imputed with any alleged failure to request permission from Glaukos to retain any production.

**Second**, Dr. Brown's counsel argues that Defendants' subpoena "seeks irrelevant documents and is overbroad, unduly burdensome and disproportionate to the needs of the case." Dkt. 30 at 1. It is not credible for Dr. Brown's counsel to argue that the documents, including those he already provided for the earlier *Glaukos* litigation, are irrelevant—Sight Sciences itself moved to compel production of Dr. Brown's *Glaukos* deposition transcript in the underlying litigation. Dkt. 210 at 1, 3 in *Sight Sciences, Inc. v. Ivantis, Inc.*, C.A. No. 21-1317-GBW-SRF. Plaintiff has dubbed Dr. Brown as knowledgeable about "certain prior art stent products and related IP" (Dkt. 1 at 6), and Defendants' document requests target that relevant knowledge. The inflated burden alleged in Dr. Brown's Response again fails to address what efforts (if any) he has made to obtain his prior *Glaukos* production,

fails to mention what burden (if any) applies to collecting and producing the paper documents he admits to having (Dkt. 30 at 3, 19, 21), and fails to acknowledge the stakes of the underlying litigation where his employer seeks a permanent injunction and millions of dollars in damages. Rather than channel efforts into complying with the subpoena, Dr. Brown (represented by Sight Sciences' counsel) compiled a 600-page Response to this Motion, concocting arguments that he will be burdened.

*Third*, Dr. Brown's counsel argues that any production would be futile because it would take too long, and they unilaterally assert that any documents would be unusable in the underlying litigation. Dkt. 30 at 2. This assumes Cooley's e-discovery team could not undertake reasonable collection and production efforts and provide rolling productions. And even if the production takes times, it will still be useful at Dr. Brown's deposition and at trial (which is still 8 months away).

Nothing in Dr. Brown's Response warrants quashing Defendants' subpoena. The Court should grant Defendants' Motion and require prompt compliance.

## ARGUMENT

### I.   Defendants' Subpoena was timely.

Dr. Brown's counsel's first argument is that Defendants' "delay" warrants quashing the subpoena. Dkt. 30 at 11. But Defendants' subpoena was served within the discovery period in the Delaware scheduling order and properly sought

3

compliance within the discovery period. Specifically, Defendants served the subpoena on June 9, 2023, twenty days before the close of fact discovery in Delaware. Courts in this circuit have found that as few as 10 days is a "reasonable" length of time for compliance. *Subair Sys., LLC v. Precisionaire Sys., Inc.*, 2008 WL 1914876, at *2 n.4 (S.D. Fla. Apr. 26, 2008). Tellingly, while Dr. Brown's counsel argues that the subpoena is unduly burdensome and would require months to comply with (an argument that is incorrect, as addressed below), Dr. Brown did not move to quash or modify the subpoena on the ground that it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i).

The cases Dr. Brown's counsel cites in support of the notion that "delay" warrants quashing a subpoena are inapposite. Dr. Brown's counsel suggests that the court in *Pushko*[1] quashed a subpoena that was served one month before the close of discovery based on "lack of diligence." Dkt. 30 at 15. That is not accurate. The plaintiff in *Pushko* served document requests a month before the close of fact discovery (which had been extended twice). *Pushko*, 2007 WL 2671263, at *2. After the defendants timely objected and refused to provide the discovery on various grounds, the plaintiff waited until four months after the close of fact discovery to move to compel the discovery. *Id.* The court thus noted that, although the plaintiff

---

[1] *Pushko v. Klebener*, 2007 WL 2671263 (M.D. Fla. Sept. 7, 2007).

had timely served its discovery requests, "the lack of diligence in pursuing that discovery after the cutoff date undermines their current request." *Id.* And in *Eli Research, LLC v. Must Have Info Inc.*, the court faulted a party for waiting two months after receiving objections to discovery requests (and until after the close of fact discovery) before moving to compel. 2015 WL 4694046, at *2 (M.D. Fla. Aug. 6, 2015). Here, Defendants moved to compel within 6 days of receiving Dr. Brown's objections and before the Delaware case's close of fact discovery. Dr. Brown's brief gives no basis for quashing a timely-served subpoena that provides a reasonable time for compliance and where a party timely moves to compel after a refusal to comply.

The rest of Dr. Brown's brief's arguments under the "delay" heading (Dkt. 30 at 11-15) pertain to purported "undue burden" under Rule 45(d)(1). To be clear, Defendants seek Dr. Brown's documents. He essentially argues that Defendants could have found a way to get his files from Glaukos' counsel. But he is naturally the best source for his own documents, which is why Defendants subpoenaed him.

Dr. Brown's brief first argues that he does not need to respond to Defendants' subpoena because "Ivantis or its counsel" should have retained the materials received in the *Glaukos* litigation. Dkt. 30 at 11-12. This argument fails for several reasons. **First**, only Ivantis was a party to the *Glaukos* litigation; the Alcon entities— Alcon Research LLC; Alcon Vision, LLC; and Alcon Inc.—were not. Dkt. 30 at 5-

5

6. Dr. Brown does not explain how the Alcon entities could be responsible for failing to retain documents that they never received in a litigation they were never a part of. **Second**, Plaintiff did not sue the Alcon entities in the underlying litigation until August 1, 2022—nine months after the *Glaukos* litigation's deadline to destroy or return all *Glaukos* litigation materials. Dkt. 30 at 5-6, 11. Dr. Brown does not explain why the Alcon entities should have expected the need for Dr. Brown's materials months before they were sued. **Third**, Dr. Brown claims that Ivantis should have found a way to get permission to retain copies of the *Glaukos* materials before November 22, 2021 (*id.* at 11-12), but he cannot explain why Ivantis should have understood a need to do so and pursued that option before November 22, 2021 (before Ivantis even filed its Answer in the underlying litigation).[2] Generalized assertions like those made by Dr. Brown here are routinely rejected by courts as insufficient to quash a subpoena. *See Smartmatic*, 2023 WL 4662241, at *3 ("[A] generalized assertion of undue burden is not enough."); *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 3099317, at *3-4 (S.D. Fla. Apr. 12, 2017) (denying motion to quash subpoena because "reliance on barebones claims of hardship is insufficient to

---

[2] Dr. Brown speculates that 25 exhibits from Dr. Brown's deposition in the prior litigation "appear" to have been collected from him and Ivantis should have retained archival copies. Dkt. 30 at 12. Even if true, a mere 25 documents would not fairly meet the requests in the subpoena, and Dr. Brown's response doesn't even indicate that he would waive any objection to their production pursuant to the subpoena.

6

meet the requirements of Rule 45").

Dr. Brown next argues that Defendants "violated Rule 45(d)(1) by failing to make reasonable efforts to obtain Dr. Brown's document production in the *Glaukos* litigation from Glaukos's counsel." Dkt. 30 at 13. Dr. Brown ignores the evidence Defendants presented that they requested that material from Glaukos' counsel who ultimately refused to respond. *See* Dkt. 1, Ex. 1, ¶ 6. Dr. Brown is also under Sight Sciences' control as its current Chief Medical Officer. Dkt. 29, Ex. R. He does not explain why it is more reasonable for Defendants to ask Glaukos—a third party with no connection to the underlying litigation—for ***Dr. Brown's materials*** rather than asking Dr. Brown. Dr. Brown could also ask his former counsel who represented him in the *Glaukos* litigation for his documents. Dkt. 30, Ex. B. Dr. Brown and his counsel in this case have refused to do so, and Glaukos' counsel has been unwilling to work with Defendants or even confirm whether they have the documents.

## II. Defendants' subpoena seeks highly relevant documents that fall well within the liberal discovery standard.

Dr. Brown does little to dispute the relevance of the materials sought, and they should be produced. *See EEOC v. Sirdah Enters., Inc*., 2015 WL 12630686, at *3 (N.D. Ga. Feb. 25, 2015) (the "liberal discovery standard" for discovery is "broadly construed with all doubts resolved in favor of open discovery"). Indeed, his employer, Plaintiff Sight Sciences, has repeatedly admitted Dr. Brown's knowledge

and materials are relevant to the underlying action. Plaintiff's initial disclosures explain that Dr. Brown possesses "[k]nowledge of certain prior art stent products and related IP developed with Mary Lynch." Dkt. 1 at 6. Plaintiff itself moved to compel the production of Dr. Brown's deposition transcripts from the prior *Glaukos* litigation, arguing it needed Dr. Brown's material in the underlying litigation because he "is a witness in the Sight case and was a co-inventor" on patents related to those asserted as prior art. *See* Dkt. 210 at 9 in *Sight Sciences, Inc. v. Ivantis, Inc.*, C.A. No.: 21-1317-GBW-SRF; *see also id.* at 3.

At most, Dr. Brown complains that Defendants have not made a "particularized" enough showing of relevance because they have not identified "specific documents known to be in Dr. Brown's possession." Dkt. 30 at 16-17. This is, of course, not the standard, and Dr. Brown's brief cites no authority for it.[3] Defendants cannot be required to identify "specific documents" that are only in Dr. Brown's possession. Nevertheless, Dr. Brown's documents discussing his work with glaucoma implants, much of which predated the claimed priority date of the Asserted Patents in the underlying litigation, are relevant to Defendants' invalidity case, and the contracts he has for his IP are relevant to the alleged damages at issue. Dr.

---

[3] The authority Dr. Brown does cite *denied* a motion to quash a subpoena seeking documents relating to advertising material and engineering drawings and data. *Kurtzon v. Sterling Indus., Inc.*, 227 F. Supp. 393, 394 (E.D. Pa. 1964).

Brown's brief tellingly identifies many plainly relevant documents. Dkt. 30, Ex. C Tr. 20:9-17, 21:13-22:5 (Dr. Lynch, Dr. Brown's wife and a named co-inventor on their patents, describing documents stored in their home relating to patents and medical devices Defendants rely on as invalidating prior art).

**III.   Dr. Brown provides no evidence to support his claim of an undue burden that is disproportionate to Defendants' need for the subpoenaed materials.**

Stunningly, Dr. Brown himself is silent about any purported undue burden. Only his employer's large, sophisticated national law firm submits a declaration purporting to support their argument that Dr. Brown, as an individual, would suffer undue burden. But Dr. Brown bears the "particularly heavy" "burden of proof in demonstrating that compliance . . . presents an undue burden" because he asks the Court to effectively quash Defendants' subpoena rather than modify it. *Sirdah*, 2015 WL 12630686, at *4; *Smartmatic*, 2023 WL 4662241, at *3-4. "Bare allegations of hardship and undue burden . . . , are insufficient[.]" *Sirdah*, 2015 WL 12630686, at *5; *see also* Fed. R. Civ. P. 45(e)(1)(D). Instead, "to demonstrate an undue burden," Dr. Brown "must put forth either affidavits or other evidence that reveals the nature of the burden," *TIC Park Ctr. 9, LLC*, 2017 WL 3099317, at *2 n.1, such as "particularized" evidence providing details such as "the 'money, time, work-hours, or other cost that [Dr. Brown] faced in complying with the subpoena.'" *Smartmatic*,

2023 WL 4662241, at *3 (quoting *ML Healthcare Servs., LLC v. Publix Super Markets, Inc*., 881 F.3d 1293, 1306-07 (11th Cir. 2018)).

Dr. Brown claims that the effort required for him to provide Defendants with ***all*** responsive documents is disproportionate to the needs of the case and unduly burdensome, so he is free to ignore Defendants' subpoena in its entirety and produce ***nothing***. Dkt. 30 at 16-19. Dr. Brown fails to explain why he cannot produce ***any*** of the requested materials, and his response falls short of the "particularly heavy burden" he must carry. *See Smartmatic*, 2023 WL 4662241, at *3. Providing no sworn statement of his own about his materials or papers, Dr. Brown instead relies on a declaration from Ross Mecham, one of Plaintiff's attorneys at Cooley, who claims to have reviewed "photographs" of Dr. Brown's computers and who estimates the time and cost to collect and process ***all*** data stored on ***all*** of Dr. Brown's computers.[4] The attorney declaration does not address Dr. Brown's paper documents, explain why Dr. Brown's compliance with Defendants' subpoena is an all-or-nothing proposal, or say why Dr. Brown must search all computers in his

---

[4] Mr. Mecham is Cooley's "e-discovery attorney assigned to [the underlying *Sight Sciences*] case." Dkt. 29, Ex. T (Ex. 18 at 8719). Mr. Mecham purportedly makes his representations using some unproduced "Statement of Work entered between Cooley LLP and TransPerfect Legal Solutions in Case No. 21:1317-GBW-SRF (D. Del.)." Mecham Dec. at ¶ 7. The attorney declaration does not provide any additional details on that document's requirements and what assumptions are made.

possession rather than conduct a reasonable search. Most of the materials sought were previously produced in the *Glaukos* litigation. Neither Dr. Brown nor his attorneys explain why those materials cannot be reproduced or whether they've made any attempt at retrieving them. *Cf.* Dkt. 29-4, Ex. V (inviting Glaukos' counsel to intervene here for a protective order, not to ask whether they still possess Dr. Brown's already-produced documents).

Dr. Brown also presents no explanation for his refusal to collect and produce admittedly relevant paper documents he admits having. Dkt. 30 at 19, 21. Dr. Lynch, Dr. Brown's wife and a named co-inventor on their patents, testified in the *Glaukos* litigation that they have relevant materials kept "in one area of [their] house, in boxes dedicated [to the patent and their research]." Dkt. 30, Ex. C Tr. 19:21-24, 20:9-17, 21:13-22:5. These materials include documents related to Dr. Brown's EyePass device, a prior art device Defendants claim invalidates Plaintiff's Asserted Claims in the underlying litigation. These materials fall squarely within Request No. 1 of Defendants' subpoena. Dr. Brown's only alleged burden associated with producing these documents is that they weigh "approximately 100 pounds." Dkt. 30 at 19.

In short, Dr. Brown provides no particularized evidence about the responsive materials in his possession, where and how they are stored, and whether he has access to the materials produced in the *Glaukos* litigation for anyone to assess any

undue burden.[5] Had Dr. Brown's true concern been the subpoena's overbreadth, however, he would have proposed a narrower scope of documents or attempted an alternative with Defendants.[6] Instead, he delayed with boilerplate objections to each request, stonewalled Defendants' attempt at any middle ground, and refused to search or produce anything. This refusal to properly respond to Defendants' subpoena is improper. *See TIC Park Ctr. 9, LLC*, 2017 WL 3099317, at *3-4.

**IV.  Dr. Brown cannot ignore Defendants' subpoena by unilaterally claiming that his materials will not help Defendants.**

Dr. Brown also argues that Defendants' subpoena is "futile" because, in his opinion, Defendants would be unable to use the requested materials. Dkt. 30 at 22-23. At base, Dr. Brown's argument is that he can help himself to a stay of discovery

---

[5] Dr. Brown's response brief now asserts that he "does not have possession of those productions." Dkt. 30 at 20 n.12. This footnote fails to clarify whether Dr. Brown has access to (rather than "possession of") the productions and can produce them. Dr. Brown himself did not provide a sworn statement to clarify what he possesses. Nor has he answered the simple question: "have you asked your former counsel from the *Glaukos* case if they still have your documents?"

[6] Dr. Brown cites cases about alleged overbreadth that have nothing to do with the facts here and involve subpoenas flawed for other reasons. *See, e.g.*, *Smith v. Pefanis*, 2008 WL 11333335, at *3 (N.D. Ga. Oct. 30, 2008) (quashing an improperly served subpoena that sought all personal cell phone records, many of which Defendant already had access to); *Tradebank Int'l Franchising Corp. v. Fla. Barter Exch., LLC*, 2014 WL 12861198, at *7 (N.D. Ga. May 13, 2014) (noting that quashed requests had "far less relevance" than other information and quashing discovery into "unrelated franchisees around the country"); *Weems Indus., Inc. v. Teknor Apex Co.*, 2022 WL 19332037, at *2 (N.D. Ga. May 16, 2022) (holding the quashed internal communications "have no relevance to Weems's proceeding").

and unilaterally moot Defendants' subpoena by delaying long enough to run out the clock. His brief cites no support for that proposition, and it should not be condoned.[7] His position is also inaccurate. Defendants will be able to use his documents at trial, which is eight months away, or in Dr. Brown's deposition, which the parties have already agreed will go forward even though discovery is closed. Dkt. 29, Ex. Q.

Dr. Brown also contends that the materials sought by Defendants' subpoena are not necessary because "Defendants already have the prior art they need" and "[b]y definition, prior art must be publicly available." Dkt. 30 at 18. Dr. Brown is not the final arbiter of what information Defendants can use to support their defense. And this argument is incorrect—even if the prior art itself is public, documents and communications about them may not be. Those materials are relevant to explain the contents of prior art, including specifics about prior art devices Dr. Brown implanted that were "on sale" or "in public use" before the Asserted Patents' priority date that would be relevant to Defendants' patent invalidity defenses in the underlying litigation. *See, e.g.*, *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct.

---

[7] Dr. Brown's suggestion that Defendants somehow "forfeited" their right to extend the schedule (Dkt. 29 at 23) is disingenuous and misleading as Dr. Brown's counsel *mandated* that Defendants not raise any issue about the Brown deposition to that Court. *See* Dkt. 29, Ex. Q ("Sight will not agree to allow his deposition to occur past the close of the fact discovery period unless defendants agree in writing that their postponement of Dr. Brown's deposition will not affect any case deadline…unless you agree to our terms, you are waiving any right to take his deposition.").

628, 630, 633 (2019) (a confidential or "secret sale" can invalidate a patent).

**V.     Defendants are willing to pay a reasonable cost of production.**

Dr. Brown asks the Court to shift "all fees and costs of compliance to Defendants." Dkt. 30 at 23. That is not the law. Dr. Brown's own case confirms that Rule 45 "*does not require* . . . that the requesting party bear the entire cost of compliance." *Bridgestone Ams., Inc. v. IBM Corp.*, 2017 WL 11532480, at *3 (N.D. Ga. June 16, 2017). Indeed, in *Bridgestone*, the Court *denied* nearly all cost shifting because the third party's "own self-interest motivated the vast majority of expenses that it incurred." *Id.* at *4. Dr. Brown and his employer, Sight Sciences, cannot and do not disavow that they have an interest in the underlying litigation. Just as Dr. Brown is currently doing, the third party in *Bridgestone* "was in no way complying with the Subpoena when it objected to the Subpoena and opposed the motion to compel; rather, it was resisting compliance and doing so for its own self-interest." *Id.* Dr. Brown has not made ***any*** efforts to comply with the subpoena, instead driving up costs by forcing Defendants to move to compel production of documents readily available and easily accessible to him (certainly with respect to the paper documents he admits having). Also similar to *Bridgestone*, Dr. Brown has offered "no basis for [the Court] to determine that [he] is not financially able to bear the entirety of the costs of production." *Id.* at *5. Dr. Brown makes unsupported assertions about his

14

lack of resources to collect, review, and produce responsive documents, Dkt. 30 at 23, but he fails to disavow that Plaintiff is paying for its same counsel from Cooley to fight the subpoena and is the party that would cover any costs. Indeed, somehow he found the resources to have Cooley prepare a 600-page Response to this Motion.

While wholly shifting the cost to Defendants is not warranted under the law and these facts, Defendants are nonetheless willing to bear a reasonable amount of actually incurred collection- and production-related vendor costs (less the cost incurred fighting the motion practice Dr. Brown caused) provided Dr. Brown agrees or is ordered to make a timely production.

## CONCLUSION

Consistent with its liberal standard and the truth-seeking purpose of discovery, Defendants respectfully request that the Court promptly grant Defendants' Motion to Compel and order Dr. Brown to produce the prior production or any portion of it that exists in his or his agents' possession, custody, or control within seven days.

Respectfully submitted this 4th day of August, 2023.

/s/ Amanda Kay Seals

| | |
|---|---|
| Justin Bova | Fredric J. Bold, Jr. |
| justin.bova@kirkland.com | Georgia Bar No. 544604 |
| Sean M. McEldowney | Bold@bmelaw.com |
| sean.mceldowney@kirkland.com | Amanda Kay Seals |
| KIRKLAND & ELLIS LLP | Georgia Bar No. 502720 |

1301 Pennsylvania Avenue, N.W.
Washington, DC  20004

Kat Li
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701

seals@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

*Attorneys for Defendants*

16

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I certify that the foregoing document has been

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(B).

This 4th day of August, 2023.

/s/ *Amanda Kay Seals*
Amanda Kay Seals
Georgia Bar No. 502720

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the within and foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL NON-PARTY DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record:

COOLEY LLP
Orion Armon
oarmon@cooley.com
1144 15th Street
Denver, CO 80202

COOLEY LLP
Michelle S. Rhyu
rhyums@cooley.com
David Murdter
dmurdter@cooley.com
Lauren Strosnick
lstrosnick@cooley.com
Alissa Wood
amwood@cooley.com
Cameron C. Vanderwall
cvanderwall@cooley.com
Angela R. Madrigal
amadrigal@cooley.com
Juan Pablo González
jgonzalez@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

WARGO, FRENCH & SINGER LLP
Heather H. Sharp
hsharp@wfslaw.com

K. Tyler Dysart
tydsart@wfslaw.com
999 Peachtree Street, N.E., Suite 1120
Atlanta, GA 30309

This 4th day of August, 2023.

*/s/ Amanda Kay Seals*
Amanda Kay Seals
Georgia Bar No. 502720