# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

IN RE: IVANTIS, INC., et al.        )
                                     )   Civil Action No. 23-mc-373-GBW-SRF
                                     )   (Underlying C.A. No. 21-1317-GBW-SRF)
                                     )
                                     )

## MEMORANDUM ORDER

At Wilmington this **7th** day of **December, 2023**, the court having considered the motion to compel Dr. Reay Brown to comply with the subpoena *duces tecum* served by defendants Ivantis, Inc. ("Ivantis"), Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants"), (D.I. 1), and the associated briefing, (D.I. 29; D.I. 30; D.I. 35), IT IS ORDERED that the motion to compel compliance is DENIED and the subpoena is QUASHED for the following reasons.

1. **Background.** This discovery dispute relates to two patent infringement suits: *Glaukos Corporation v. Ivantis, Inc.*, C.A. No. 8:18-620-JVS-JDE (C.D. Cal.) (the "*Glaukos* Litigation"), and *Sight Sciences, Inc. v. Ivantis, Inc., et al.*, C.A. No. 21-1317-GBW-SRF (D. Del.) (the "Underlying Litigation"). In both cases, the respective plaintiffs allege that Ivantis' Hydrus® Microstent product infringes their patents covering intraocular implants for treating glaucoma.

2. The patents asserted in the *Glaukos* Litigation were invented by Dr. Brown and his wife, Dr. Mary Lynch, and Dr. Brown served as a third-party consultant to Glaukos in that case. (D.I. 30, Ex. A at ¶¶ 1, 21, 33-48) Ivantis obtained document discovery from Dr. Brown and took his deposition in the *Glaukos* Litigation. (*Id.*, Ex. B) On October 23, 2018, while the

*Glaukos* Litigation was pending, Sight Sciences, Inc. ("Sight Sciences") hired Dr. Brown as its Chief Medical Officer. (D.I. 1 at 4 n.2)

3. The parties reached a settlement of the *Glaukos* Litigation on September 15, 2021, one day before the Underlying Litigation was filed by Sight Sciences. (C.D. Cal. C.A. No. 8:18-620-JVS-JDE, D.I. 852) Pursuant to the protective order governing the *Glaukos* Litigation, Ivantis was required to return or destroy most of the documents it had obtained from Dr. Brown during discovery, with limited exceptions including retention of an archival copy of a deposition transcript along with corresponding exhibits. (D.I. 1, Ex. 2 at ¶ 15)

4. In its initial disclosures served on May 24, 2022 in the Underlying Litigation, Ivantis listed Dr. Brown as an individual who may have discoverable information about the scope of the prior art. (*Id.*, Ex. 3 at 2-3) In accordance with the District of Delaware's Default Standard for Discovery, Sight Sciences disclosed its ten custodians most likely to have discoverable information the following month but did not include Dr. Brown on the list. (D.I. 30, Ex. J at 2-3)

5. On August 1, 2022, Sight Sciences added Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Alcon") as defendants in the Underlying Litigation based on Alcon's acquisition of Ivantis on January 10, 2022. (D.I. 1, Ex. 1 at ¶¶ 2-3) Defendants served their initial invalidity contentions one month later, relying on four prior art references naming Dr. Brown as an inventor. (D.I. 30, Ex. M at 5-7, 11)

6. Sight Sciences added Dr. Brown to its initial disclosures on March 22, 2023. (D.I. 1, Ex. 5) On April 21, 2023, Defendants represented their intention to notice Dr. Brown for deposition, and Sight Sciences offered a deposition date of June 29. (D.I. 30, Ex. P) Defendants served the instant subpoena *duces tecum* on Dr. Brown on June 9, 2023. (D.I. 1, Ex. 6) Dr.

Brown served his responses and objections to the subpoena on June 23, declining to produce any documents. (*Id.*, Ex. 7)

7. On June 27, 2023, Defendants moved to extend the case schedule to allow for depositions after the fact discovery period, which was scheduled to close on June 29. (D.I. 30, Ex. T at 1; D.I. 1, Ex. 4 at ¶ 2) The court denied the motion to extend the case schedule on July 3. (*Id.*, Ex. U at ¶¶ 24, 36)

8. On June 29, 2023, Defendants initiated this miscellaneous action in the Northern District of Georgia by filing a motion to compel compliance with the subpoena. (D.I. 1) In the motion, Defendants narrow the scope of the production sought from Dr. Brown to "the materials he has already searched for and produced in the prior Glaukos litigation." (*Id.* at 3)[1] The Northern District of Georgia transferred the action to this court on August 10, 2023. (D.I. 36) The action was referred to the undersigned judicial officer on September 25, 2023. (D.I. 45)

9. Expert discovery in the Underlying Litigation closed on September 28, 2023. (D.I. 93) Case dispositive motions were filed on October 12. (*Id.*) A jury trial is set to begin on April 8, 2024. (*Id.*)

10. **Legal standard.** Rule 45 of the Federal Rules of Civil Procedure permits a party to seek the production of documents from a nonparty through the issuance of a subpoena *duces tecum*. Fed. R. Civ. P. 45(a)(1)(D). A Rule 45 subpoena *duces tecum* is "necessarily constrained by the general scope of discovery provided in Federal Rule of Civil Procedure 26(b)(1)." *Seven*

---

[1] The original subpoena contained fourteen document production requests seeking "All Documents and communications" prior to a specified date regarding, in general, intraocular implants (RFP Nos. 1-3), and communications with the moving Defendants (RFP Nos. 4-8), among other similar requests relating to non-parties. (D.I. 1, Ex. 6 at 6-8) Defendants have, for purposes of the pending motion, limited the relief they are seeking to RFP No. 9, which pertains to documents provided to any party in the *Glaukos* Litigation. (*Id.* at 8)

3

*Z Enters., Inc. v. Giant Eagle, Inc.*, 2020 WL 7240365, at *1 (W.D. Pa. Mar. 6, 2020) (citing *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013)). Thus, the court may limit or deny discovery when the information sought is not relevant to the parties' claims or defenses or proportional to the needs of the case. *Deibler v. SanMedica Int'l, LLC*, 2021 WL 6136090, at *2 (D.N.J. Dec. 29, 2021).

**11.** Under Rule 45(d)(1), the party issuing the subpoena must take reasonable steps to avoid imposing an undue burden or expense on a nonparty subject to the subpoena. Fed. R. Civ. P. 45(d)(1). To determine whether responding to a subpoena *duces tecum* would impose an undue burden, courts consider "issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed." *United States v. Massimino*, 368 F. Supp. 3d 852, 855 (E.D. Pa. Mar. 25, 2019) (quoting *Diodato v. Wells Fargo Ins. Servs. USA, Inc.*, 2013 WL 6054824, at *1 (M.D. Pa. Nov. 15, 2013)). Rule 45(d)(3)(A) requires the court to "quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

**12. Analysis.** Dr. Brown argues that Defendants' motion to compel compliance with the subpoena should be denied, and the subpoena should be quashed, for three reasons: (1) Defendants lacked diligence in pursuing the requested discovery; (2) the subpoena seeks discovery that is not relevant and proportional; and (3) the requested discovery will serve no purpose because fact and expert discovery are now closed. (D.I. 29 at 1-2) There is considerable overlap among these considerations in the context of Rule 45. Ultimately, the record before the court confirms that Defendants failed to take reasonable steps to avoid imposing undue burden or expense on Dr. Brown. Fed. R. Civ. P. 45(d)(1). As a result, Defendants' motion to compel compliance is denied, and the subpoena is quashed.

**13.** Defendants had an opportunity to retain the documents they now seek, with no additional burden to Dr. Brown whatsoever, at the very outset of the Underlying Litigation. Defendants make no meaningful attempt to explain why Ivantis did not ask to retain possession of Dr. Brown's production in the *Glaukos* Litigation after the case settled. There is no dispute that the parties to the *Glaukos* Litigation notified the Central District of California that the case was settled on September 15, 2021, one day before the Underlying Litigation was filed, or that Ivantis was a party to both cases. Defendants' suggestion that "clairvoyance" would have been required to anticipate the need for Dr. Brown's documents at the earliest stage of the Underlying Litigation is simply not plausible. (D.I. 35 at 2)

**14.** Defendants also fail to meaningfully address the fact that they were permitted to retain copies of the 25 exhibits marked during Dr. Brown's deposition under the terms of the *Glaukos* protective order: "Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, *deposition and trial exhibits*, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material." (D.I. 1, Ex. 2 at ¶ 15) (emphasis added). In a footnote, Defendants state it is speculative to suggest they should have retained archival copies of the exhibits, and they argue that "a mere 25 documents would not fairly meet the requests in the subpoena." (D.I. 35 at 6 n.2) These arguments do not address why Dr. Brown, as a third party, should be compelled to produce these 25 documents when there is no dispute that Ivantis had possession of the exhibits and was entitled to keep them. Defendants' arguments also ignore the fact that the 25 exhibits could have been used to demonstrate the relevance and proportionality of other documents from the *Glaukos* Litigation.

15. Unable to explain why Ivantis returned or destroyed Dr. Brown's production in the *Glaukos* Litigation without a challenge, despite the production's likely relevance to the Underlying Litigation, Defendants attempt to draw a distinction between the discovery needs of Ivantis and Alcon in the Underlying Litigation. (D.I. 35 at 5-6) Putting aside the absence of supporting case authority and the fact that Defendants collectively served the subpoena on Dr. Brown, (D.I. 1, Ex. 6), the record confirms that Defendants failed to take reasonable steps to avoid imposing a burden on Dr. Brown, *see* Fed. R. Civ. P. 45(d)(1). Defendants represent that they "attempted to confirm with Glaukos' counsel . . . whether they or a vendor are still in possession of Dr. Brown's documents or communications that were produced in that litigation. Glaukos' counsel . . . has not to-date provided a response on whether they or a vendor are in possession of the documents." (D.I. 1, Ex. 1 at ¶ 6) The underlying communications are not attached as exhibits, and there is no indication when this attempt was made or whether follow-up efforts ensued.

16. Defendants suggest that it is not reasonable to seek the discovery from Glaukos' counsel or Glaukos because the materials belong to Dr. Brown. (D.I. 35 at 7) But Dr. Brown's objections to the subpoena served on June 21, 2023 indicate that he does not possess the production as it was made in the *Glaukos* Litigation, and pursuing the production from him would require a re-review of all his files. (*See, e.g.*, D.I. 1, Ex. 7 at 4-5; Ex. 1 at ¶¶ 11-12) Defendants focus on what efforts Dr. Brown has undertaken to investigate whether he can obtain the production in the *Glaukos* Litigation from Glaukos' counsel or Glaukos. (D.I. 1 at 11; D.I. 35 at 2) But there is no dispute that Defendants did not subpoena Glaukos for the information, and the record suggests that Defendants gave up their pursuit of the documents from Glaukos' counsel after a single attempt at an unknown time. (D.I. 1, Ex. 1 at ¶ 6) Defendants cite no

6

authority to support their suggestion that a subpoenaed third party should bear the burden of obtaining the requested documents from other, non-subpoenaed third parties.

**17.** Dr. Brown has established that responding to the subpoena would be unduly burdensome. The declaration of e-discovery attorney Ross Mecham represents that the production would require the collection, processing, and review of 1,400 gigabytes of ESI from Dr. Brown's devices, at a cost of approximately $654,040 over the course of three and a half months. (D.I. 29, Ex. L at ¶¶ 6-14) Defendants do not challenge these specific representations, other than to suggest it may not be necessary to search all the data on all of Dr. Brown's computers. (D.I. 35 at 10) Defendants otherwise focus on the fact that the declaration does not address Dr. Brown's paper files. (*Id.* at 11) But Dr. Brown specified in his objection to the subpoena that the paper files amount to about 100 pounds of documents. (D.I. 1, Ex. 7)

**18.** Defendants insist the subpoena was timely because it was issued on June 9, twenty days before the close of fact discovery on June 29, 2023. (D.I. 35 at 3-4) But Defendants do not challenge Dr. Brown's position that they could have issued the subpoena earlier. There is no dispute that Defendants disclosed Dr. Brown on May 24, 2022 in their initial disclosures as an individual having discoverable information about the scope of the prior art. (D.I. 1, Ex. 3 at 2-3) Moreover, Defendants' initial invalidity contentions served on September 1, 2022 relied on four prior art references by Dr. Brown. (D.I. 30, Ex. M at 5-7, 11) Yet Defendants did not subpoena Dr. Brown's documents until June 9, 2023, more than a year after disclosing him in the initial disclosures and more than nine months after relying on prior art references invented by Dr. Brown in their initial invalidity contentions.

**19.** Defendants argue that the subpoena gave Dr. Brown a "reasonable time for compliance" by allowing fourteen days to make the production. (D.I. 35 at 5) On this record,

however, the timing of Defendants' subpoena was not reasonable. For the reasons stated at ¶ 18, *supra*, it was not necessary for Defendants to wait until twenty days before the close of fact discovery to serve the subpoena when they were aware of the relevance of the subpoenaed information since the very beginning of the Underlying Litigation. The fact discovery deadline should be viewed as the date by which all discovery must be completed, and a party serving a subpoena late in the discovery period runs the risk that a subpoena will be quashed when the discovery sought would not be produced until after the discovery deadline. *See Allstate Ins. Co. v. Papanek*, 309 F. Supp. 3d 511, 513-14 (S.D. Ohio 2018) (quashing subpoena served before the discovery deadline where "the production requested would . . . occur weeks after the expiration of such deadline."). Even if Dr. Brown had not responded to the subpoena with objections necessitating the instant motion practice, Dr. Brown's testimony in the *Glaukos* Litigation and the declaration of Ross Mecham render it highly unlikely that the production could be made within fourteen days. (D.I. 30, Ex. B at 103:23-104:15; D.I. 29, Ex. L)

20. The relevance of Dr. Brown's documents produced in the *Glaukos* Litigation does not outweigh the burden of producing them. Had Dr. Brown's documents been the lynchpin to Defendants' invalidity or damages case, Defendants would have subpoenaed those documents earlier. Requiring Dr. Brown to undertake the burden of re-collecting, re-processing, and re-producing the *Glaukos* Litigation documents in the Underlying Litigation would be disproportionate to the benefit derived from those documents at this late stage of the case, now that fact and expert discovery are closed, and case dispositive motions are fully briefed. (C.A. No. 21-1317-GBW-SRF, D.I. 93) Despite narrowing the document requests to those produced in the *Glaukos* Litigation, Defendants have not provided any targeted excerpts from Dr. Brown's deposition demonstrating that such discovery is essential to the merits of the Underlying

Litigation. Instead, Defendants broadly state that the documents may be relevant to invalidity, damages, and defending claims of alleged willfulness. (D.I. 1 at 2, 6, 8, 13)

21. In sum, Defendants' motion to compel is denied because they failed to satisfy their obligation under Rule 45(d)(1) to minimize the burden on Dr. Brown, and the burden of producing the documents at this stage of the case outweighs any benefit from their production.

22. **Conclusion.** For the foregoing reasons, IT IS ORDERED that Defendants' motion to compel compliance with the subpoena is DENIED, (D.I. 1), and the subpoena of Dr. Brown's documents is QUASHED.

23. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **December 14, 2023**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

24. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**25.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge